# EXHIBIT A

[EXCERPTS OF CONTRIBUTION AND SECURITIES PURCHASE AGREEMENT]

*EXECUTION VERSION*

CONTRIBUTION AND SECURITIES PURCHASE AGREEMENT

BY AND AMONG

LEGACY RESTORATION, LLC,

SNR GLOBAL, LLC,

EACH SELLER PARTY HERETO,

LEGACY RESTORATION CO-INVEST, LLC,

LEGACY RESTORATION HOLDINGS, LLC

AND

LEGACY RESTORATION INTERMEDIATE HOLDINGS, LLC

December 21, 2023

## TABLE OF CONTENTS

Page

**ARTICLE I. DEFINED TERMS; RULES OF CONSTRUCTION** ..................................... 2
   1.1   Defined Terms .................................................................................................. 2
   1.2   Rules of Construction ..................................................................................... 19

**ARTICLE II. CONTRIBUTION AND PURCHASE; PURCHASE PRICE AND ADJUSTMENTS** ............................................................................................. 20
   2.1   Contribution and Exchange of Contributed Interests; Purchase and Sale of Purchased Interests .................................................................................. 20
   2.2   Purchase Price ................................................................................................. 21
   2.3   Delivery of Estimated Closing Statement ...................................................... 21
   2.4   Payments at Closing ....................................................................................... 22
   2.5   Proposed Closing Statement and Final Closing Statement ............................ 22
   2.6   Purchase Price Adjustment ............................................................................. 26
   2.7   Escrow Amount .............................................................................................. 26
   2.8   The Closing .................................................................................................... 26
   2.9   Deliveries at Closing ...................................................................................... 27
   2.10  Withholdings .................................................................................................. 29
   2.11  Purchase Price Allocation ............................................................................... 29

**ARTICLE III. REPRESENTATIONS AND WARRANTIES REGARDING THE SELLERS** ........................................................................................................... 30
   3.1   Ownership ...................................................................................................... 30
   3.2   Organization, Good Standing, Qualification and Power ............................... 30
   3.3   Authority; Execution and Delivery; Enforceability ....................................... 30
   3.4   No Conflicts; Consents and Approvals .......................................................... 31
   3.5   Sellers' Consent ............................................................................................. 31
   3.6   No Other Agreement to Purchase .................................................................. 31
   3.7   Litigation ........................................................................................................ 32
   3.8   Relationships with Related Persons ............................................................... 32
   3.9   Sophisticated Seller ........................................................................................ 32

**ARTICLE IV. REPRESENTATIONS AND WARRANTIES REGARDING THE COMPANY GROUP** ....................................................................................... 33
   4.1   Company Group Status and Authority ........................................................... 33
   4.2   Capitalization ................................................................................................. 34
   4.3   Company Subsidiaries; Indebtedness; Distributions ...................................... 35
   4.4   No Conflicts; Consents and Approvals .......................................................... 35
   4.5   Financial Statements; Books and Records; Internal Controls ....................... 36
   4.6   Absence of Undisclosed Liabilities ............................................................... 37
   4.7   CARES Act .................................................................................................... 37
   4.8   Bank Accounts ............................................................................................... 37
   4.9   Assets; Real Property ..................................................................................... 37

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 4.10 | Inventory | 39 |
| 4.11 | Material Contracts | 39 |
| 4.12 | Vendors, Subcontractors, and Backlog Contracts | 41 |
| 4.13 | Rebate Agreements | 42 |
| 4.14 | Labor | 42 |
| 4.15 | Employee Benefit Plans and Related Matters; ERISA | 43 |
| 4.16 | Intellectual Property; Information Technology | 45 |
| 4.17 | Governmental Authorizations; Compliance with Law | 47 |
| 4.18 | Litigation | 47 |
| 4.19 | Taxes | 47 |
| 4.20 | Absence of Changes | 50 |
| 4.21 | Insurance | 52 |
| 4.22 | Environmental Matters | 53 |
| 4.23 | Brokers | 54 |
| 4.24 | Transactions with Affiliates | 54 |
| 4.25 | Anti-Corruption | 54 |
| 4.26 | No Other Representations and Warranties | 55 |
| **ARTICLE V. REPRESENTATIONS AND WARRANTIES OF THE PURCHASER** | | **56** |
| 5.1 | Organization, Good Standing, Qualification and Power | 56 |
| 5.2 | Authority; Execution and Delivery; Enforceability | 56 |
| 5.3 | No Conflicts; Consents and Approvals | 57 |
| 5.4 | Brokers | 57 |
| 5.5 | Acquisition of Purchased Interests for Investment | 57 |
| 5.6 | Litigation | 57 |
| 5.7 | R&W Policy | 58 |
| 5.8 | Non-Reliance | 58 |
| **ARTICLE VI. COVENANTS AND AGREEMENTS** | | **58** |
| 6.1 | Conduct of Business Prior to the Closing | 58 |
| 6.2 | Public Announcements | 59 |
| 6.3 | Transfer Taxes | 59 |
| 6.4 | Affiliate Transactions | 59 |
| 6.5 | Further Assurances | 59 |
| 6.6 | Confidentiality | 60 |
| 6.7 | Non-Competition | 61 |
| 6.8 | Non-Solicitation | 61 |
| 6.9 | Non-Disparagement | 62 |
| 6.10 | Release | 62 |
| 6.11 | Acknowledgement/Tolling | 63 |
| 6.12 | Remedy for Breach | 63 |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 6.13 | Pre-Closing Rebates | 63 |
| 6.14 | Replacement of Guarantees | 64 |
| 6.15 | Access to Information | 64 |
| 6.16 | Exclusivity | 65 |
| 6.17 | Restructuring | 66 |
| 6.18 | Financing Cooperation | 66 |
| 6.19 | Prior Acts Coverage | 68 |
| **ARTICLE VII. TAX MATTERS** | | **68** |
| 7.1 | Filing of Tax Returns | 68 |
| 7.2 | Cooperation on Tax Matters | 68 |
| 7.3 | Tax Treatment | 69 |
| 7.4 | Apportionment of Taxes for a Straddle Tax Period | 69 |
| 7.5 | Seller Tax Matters | 70 |
| 7.6 | Contests Related to Taxes | 70 |
| 7.7 | Tax Refunds | 71 |
| **ARTICLE VIII. INDEMNIFICATION** | | **71** |
| 8.1 | Indemnification Generally | 71 |
| 8.2 | Limitations | 73 |
| 8.3 | Assertion of Claims; Payment of Claims | 74 |
| 8.4 | Purchase Price Adjustment | 76 |
| 8.5 | Release of Escrow Funds | 76 |
| 8.6 | Exclusive Remedy | 77 |
| **ARTICLE IX. CONDITIONS TO CLOSING** | | **77** |
| 9.1 | Conditions to Obligations of All Parties | 77 |
| 9.2 | Conditions to Obligations of Purchaser | 78 |
| 9.3 | Conditions to Obligations of the Sellers | 78 |
| **ARTICLE X. TERMINATION OF AGREEMENT** | | **79** |
| **ARTICLE XI. General Provisions** | | **80** |
| 11.1 | Assignment | 80 |
| 11.2 | Remedies; Specific Performance | 80 |
| 11.3 | No Third-Party Beneficiaries | 81 |
| 11.4 | Notices | 81 |
| 11.5 | Headings | 82 |
| 11.6 | Counterparts | 82 |
| 11.7 | Entire Agreement | 82 |
| 11.8 | Fees and Expenses | 83 |
| 11.9 | Amendments and Waivers | 83 |
| 11.10 | Severability | 83 |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 11.11 | Governing Law | 83 |
| 11.12 | Waiver of Jury Trial | 83 |
| 11.13 | Consent to Jurisdiction | 84 |
| 11.14 | Recourse | 84 |
| 11.15 | Seller Representative | 85 |

## CONTRIBUTION AND SECURITIES PURCHASE AGREEMENT

This **CONTRIBUTION AND SECURITIES PURCHASE AGREEMENT**, dated as of December 21, 2023 (this "*Agreement*"), is entered into by and among Legacy Restoration, LLC, a Minnesota limited liability company (the "*Purchaser*"), SNR Global, LLC, a Delaware limited liability company (the "*Company*"), the Persons listed on Schedule I (collectively the "*Sellers*") Co-Invest, LLC, a Delaware limited liability company ("*Legacy Co-Invest*"), Legacy Restoration Holdings, LLC, a Delaware limited liability company ("*Holdings*") and Legacy Restoration Intermediate Holdings, LLC, a Delaware limited liability company ("*Intermediate*" and together with Purchaser, Legacy Co-Invest, and Holdings, the "*Purchaser Group*").

"*Affiliate*" means, with respect to any Person, another Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person. The term "control" (including, with correlative meanings, the terms "controlled by" and "under common control with") includes the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether by ownership of voting securities or otherwise; provided, that (i) the Company Group shall not be considered an Affiliate of any Seller following the Closing; (ii) no Seller nor any Affiliate of any Seller shall be considered an Affiliate of the Company Group following the Closing; and (iii) in the case of the Purchaser, the term "Affiliate" shall not at any time include any portfolio companies of Bessemer Investors LLC and its Affiliates (other than, following the Closing, the Purchaser).

"*Business*" means the business of exterior residential and multi-family restoration (including but not limited to the repair or replacement of roofing, siding, gutters and windows), residential and multi-family renovations, interior and exterior residential and multi-family maintenance and related services, sales and lead generation activities.

"*Litigation Expense*" means any out-of-pocket expenses incurred in connection with investigating, defending or asserting any claim, legal or administrative action, suit or Proceeding incident to any matter indemnified against hereunder including court filing fees, court costs, arbitration fees or costs, witness fees and fees and disbursements of outside legal counsel, investigators, expert witnesses, accountants and other professionals.

"*Losses*" means any and all actual losses, adverse claims, damages, liabilities, costs, charges, penalties, expenses (including reasonable attorneys' fees and accountants' and other professionals' fees and Litigation Expenses), or assessments arising from or in connection with any such matter that is the subject of indemnification under ARTICLE VIII; provided, however, that "Losses" shall not include punitive damages, except to the extent actually awarded to a Governmental Entity or other third party.

"*Major Sellers*" means each of (i) Christopher Eubank, (ii) JT Shaheen, (iii) John Falls, (iv) Oswaldo Barajas, (v) Aaron Grigsby, (vi) Jeremy Eubank, (vii) Chase Hoffman and (viii) Jeremiah Lipscomb.

"*Restriction Period*" means, as applicable, (x) a period of five years following the Closing Date for the Major Sellers, (y) a period of three years following the Closing Date for the Minor Sellers and Kirtis Green.

6.6    Confidentiality.

(a)    After the Closing, and forever thereafter, each Seller shall not, and each shall cause its respective Seller Related Parties not to, at any time, directly or indirectly, communicate, divulge, disclose, furnish or make accessible to any Person any aspect of the Confidential Information (as defined below) or use (other than for tax, legal, compliance or reporting purposes) the Confidential Information in any manner or use any of the Confidential Information other than for the benefit of the Purchaser and the Company Group. Without in any way limiting each Seller's obligations in the preceding sentence not to disclose Confidential Information, a Seller will not be deemed to be in breach of this Agreement solely by reason of remembering (through unaided memory only), retaining and using its increased knowledge (through unaided memory only). For the purposes hereof, a memory is unaided if such natural person has not intentionally memorized the information for the purpose of retaining or subsequently using or disclosing the information.

(b)    As used in this Section 6.6, "*Confidential Information*" means all privileged, proprietary or confidential information (including, without limitation, oral, written and electronic information) related to or concerning the Company Group, including, without limitation, confidential techniques, processes, recipes, formulations, know-how, financial information, copyrights, patents, trademarks, trade names, slogans, logos, designs, service marks, computer software programs and systems, databases, magnetic media, systems and programs, trade secrets, business lists, customer lists, prospects lists, client lists, supplier lists, employee personnel files, engineering data, marketing data, marketing opportunities, sales data, logs, consultants' reports, budgets, ratings, forecasts, format strategy, financial reports and projections, other financial data,

tapes and electronic data processing files, accounting journals and ledgers, accounts receivable records and sales, operating, marketing and business plans, and all analyses, compilations, forecasts, interpretations, studies, notes, other materials and portions thereof prepared by any Seller or any of their respective Seller Related Parties or any of their Representatives, or otherwise on any of the their behalf, that contain, reflect or are based, in whole or in part, on such information, including, without limitation, those stored in electronic format. The term "Confidential Information" shall not include any information that (i) is or becomes generally available to the public (including general industry knowledge) other than as a result of disclosure by any Seller or any of their respective Seller Related Parties or to the knowledge of such Persons and their Representatives, by any Person in violation of an obligation or duty of confidentiality, (ii) is required to be disclosed by any Seller or any of their respective Seller Related Parties pursuant to the terms of a valid Order issued, promulgated or entered by or with any Governmental Entity of competent jurisdiction or other requirement of Applicable Laws or (iii) is being disclosed in connection with any Proceeding to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement, the Related Documents or the transactions contemplated hereby or thereby.

(c) Notwithstanding anything to the contrary in this Section 6.6, if any Seller or any Seller Related Party is required by Applicable Laws to disclose any Confidential Information, such Person shall, and the Sellers shall cause such Person to, (i) give the Purchaser reasonably prompt written notice of the circumstances surrounding such compelled disclosure and the nature of the proposed disclosure, and an opportunity to seek, at the Purchaser's sole cost and expense, an appropriate protective order with respect thereto, (ii) consult and cooperate with the Purchaser, at the Purchaser's sole cost and expense, with respect to taking steps to resist or narrow the scope of such requirement or legal process, (iii) disclose such information only to the extent legally required as determined by such Person's legal counsel and (iv) at the Purchaser's sole cost and expense, use commercially reasonable efforts to ensure that all Confidential Information that is so disclosed will be afforded confidential treatment.

6.7    Non-Competition.

Each Major Seller and Minor Seller hereby acknowledges that due to its position with and relationship to the Company, it has been responsible for developing and maintaining (in whole or in part) the goodwill of the Company Group. To protect the Company Group's trade secrets and relationships and goodwill with customers, except as set forth on Schedule 6.6, for the applicable Restriction Period, each Major Seller and Minor Seller shall not, and shall not permit any of their respective Seller Related Parties to, in any manner, directly or indirectly, participate or engage in, or manage, operate, consult with, render services for or represent or own, directly or indirectly, alone or as a partner, joint venturer, member, equityholder, employee or otherwise, any entity that is engaged in, the Business. Notwithstanding the foregoing, this Section 6.7 shall not restrict any Seller from (A) passive ownership of three percent (3%) or less of any entity whose securities have been registered under the Securities Act of 1933, as amended, or Section 12 of the Exchange Act, (B) owning any amount of equity interest in, or being an officer, director, employee or service provider of, Purchaser or any of its Affiliates. The obligations under this Section 6.7 shall apply throughout the world.

6.8    Non-Solicitation.

(a) Each Seller hereby agrees that neither it nor any of its respective Seller Related Parties will, during their respective Restriction Period, directly or indirectly through another Person (i) induce or attempt to induce any employee, officer, director or manager of any Company Group member or the Purchaser Group member to leave the employ of any Company Group member or Purchaser Group member, or in any way interfere with the relationship between any Company Group member or Purchaser Group member, on the one hand, and any employee, officer, manager or director thereof, on the other hand, (ii) solicit to hire or hire any Person who was an employee, officer, manager or director of any Company Group member or Purchaser Group member until twelve months after such individual's employment or other relationship with any Company Group member or Purchaser Group member has been terminated or (iii) induce any customer, supplier, or licensee of any Company Group member to cease doing business with any Company Group member or in any way interfere with the relationship between any Company Group member, on the one hand, and any such customer, supplier, or licensee, on the one hand.

6.9    Non-Disparagement.

No Seller shall, directly or indirectly at any time after the Closing, engage in any conduct or make any statement to the public or any third party, whether in commercial or noncommercial speech, disparaging or criticizing in any way any Company Group member or Purchaser Group member, or their respective officers, directors, employees or agents or any products or services offered by any of them, nor shall it engage in any other conduct or make any other statement that could be reasonably expected to impair the goodwill of any of them; provided, however, that nothing in this Section 6.9 shall restrict any testimony or filings in any legal matter or any communications with any Governmental Entity.

6.11    Acknowledgement/Tolling.

Each Seller hereby acknowledges and agrees that (a) the Company Group's Business is intensively competitive and can be conducted throughout the world; (b) the restrictions set forth in Sections 6.5 through 6.11 are essential conditions of this Agreement and are fair and reasonable, including with respect to geographical and temporal scope and in all other respects; (c) the restrictions will not prevent such Seller from earning a livelihood; (d) the restrictions are necessary for the protection of the Company Group's Confidential Information, goodwill, and customer and employee relationships, and the risk of unfair competition that the Company Group would face absent such restrictions; (e) it would not be reasonable for the Purchaser to pay any consideration to the Sellers in respect of the Company Interests and enter into this Agreement without the restrictions; and (f) in light of the foregoing and such Seller's education, skills, abilities and financial resources, such Seller will not assert, and it should not be considered, that the enforcement of any of the restrictions are void or unenforceable or would pose an undue hardship to such Seller. Each Seller agrees that if, at some later date, a court of competent jurisdiction determines that any of the restrictions set forth in Sections 6.5 through 6.11 constitute an unreasonable or otherwise unenforceable restriction against such Seller, the provisions of Sections 6.5 through 6.11 will not be rendered void but shall be reformed or "blue penciled" by the court by the least extent necessary to remain in full force and effect for the longest period and largest scope and geographic area that would not constitute such an unreasonable or unenforceable restriction. Each Seller further agrees that should any Seller breach any of the provisions of Sections 6.5 through 6.11 above, the running of its applicable Restriction Period shall be tolled during the period of such breach.

6.12    Remedy for Breach.

Each Seller agrees that any breach or threatened breach by such Seller, or any its respective Seller Related Parties of any of the restrictions set forth in Sections 6.5 through 6.11 will result in irreparable and continuing damage to the Protected Parties for which there is no adequate remedy at law. Thus, the Protected Parties shall be entitled to seek injunctive relief, including a temporary restraining order, temporary injunction, preliminary injunction and/or permanent injunction, without first posting a bond and without proof of actual damages, to restrain any such breach or threatened breach. Such injunctive relief shall be in addition to any and all other legal or equitable remedies available to the Protected Parties against such Seller or Seller Related Party for such breaches or threatened breaches.

# ARTICLE VIII.

# INDEMNIFICATION

8.1    Indemnification Generally.

(b)    Indemnification by the Sellers.

(i)    Subject to the other terms and conditions of this ARTICLE VIII, the Sellers, jointly and severally, agree to indemnify and hold harmless the Purchaser Indemnitees from any and all Losses they may suffer, sustain or incur arising from, in connection with, or as a result of:

(B) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by any Seller or, to the extent required to be performed at or prior to the Closing, the Company Group pursuant to this Agreement;

11.2  Remedies; Specific Performance.

Any and all remedies provided herein will be deemed cumulative with and not exclusive of any other remedy conferred hereby, or by law or equity upon such party hereto, and the exercise by a party hereto of any one remedy will not preclude the exercise of any other remedy. Each Seller, the Company and the Purchaser agree that irreparable harm for which monetary damages, even if available, would not be an adequate remedy, would occur in the event that the parties hereto do not fully and timely perform their respective obligations under or in connection with this Agreement in accordance with their specific terms or otherwise breach such provisions. It is accordingly agreed that the parties hereto shall be entitled to seek an injunction or injunctions, specific performance and other equitable relief to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement, in each case without proof of damages and without posting a bond or undertaking, this being in addition to any other remedy to which they are entitled at law or in equity. Each Seller, the Purchaser and the Company agree that it will not oppose the granting of an injunction, specific performance and other equitable relief when expressly available pursuant to the terms of this Agreement on the basis that the other parties hereto have an adequate remedy at law or an award of specific performance is not an appropriate remedy for any reason at law or equity. Notwithstanding the foregoing, but without limiting the rights of any person under the definitive documentation governing the Debt Financing, in no event shall the Sellers or the Company Group or any of their respective Affiliates or representatives be entitled to, or permitted to seek, specific performance against the Debt Financing Sources.

11.11  Governing Law.

This Agreement, and all claims, disputes or causes of action (whether in contract or in tort, at law or in equity or otherwise) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution, performance or enforcement of this Agreement, shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be performed entirely within such state, without regard to the conflicts of law principles of such State.

11.12  Waiver of Jury Trial.

EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT OR ANY DOCUMENT OR AGREEMENT CONTEMPLATED HEREBY IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY DOCUMENT OR AGREEMENT CONTEMPLATED HEREBY OR THE TRANSACTIONS. EACH PARTY HERETO CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (B) SUCH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (C) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY AND (D) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND EACH DOCUMENT OR AGREEMENT CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

11.13   <u>Consent to Jurisdiction</u>.

EACH OF THE PARTIES HERETO: (A) CONSENTS TO SUBMIT ITSELF TO THE EXCLUSIVE PERSONAL JURISDICTION OF (I) THE FEDERAL COURTS SITTING IN THE SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE COUNTY OF NEW YORK AND (II) ANY NEW YORK STATE COURT LOCATED IN THE COUNTY OF NEW YORK IN CONNECTION WITH ANY CLAIM, DISPUTE OR CAUSE OF ACTION (WHETHER IN CONTRACT OR IN TORT, AT LAW OR IN EQUITY OR OTHERWISE) THAT ARISES OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS; (B) AGREES THAT IT WILL NOT ATTEMPT TO DENY OR DEFEAT SUCH PERSONAL JURISDICTION BY MOTION OR OTHER REQUEST FOR LEAVE FROM ANY SUCH COURT; AND (C) AGREES THAT IT WILL NOT BRING ANY ACTION RELATING TO THIS AGREEMENT OR ANY RELATED DOCUMENT OR ANY OF THE TRANSACTIONS OR THEREBY IN ANY COURT OTHER THAN A FEDERAL COURT SITTING IN THE SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE COUNTY OF NEW YORK OR A NEW YORK STATE COURT UNLESS VENUE WOULD NOT BE PROPER UNDER RULES APPLICABLE IN SUCH COURTS.