UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------- X
                                  :
LEGACY RESTORATION, LLC,          :
                                  :
                Plaintiff,        :
                                  :
                                  :   Case No. 1:25-CV-05319
        v.                        :
OSWALDO "JUNIOR" BARAJAS,         :
USA CONTRACTING CO, LLC,          :
LEAH RAFFLES, AND BRIAN           :
WOLFF,                            :
                                  :
                Defendants.       :
                                  :
                                  :
-------------------------------- X
```

## **FIRST AMENDED COMPLAINT**

Plaintiff Legacy Restoration, LLC ("Legacy" or the "Company"), by its attorneys, Sidley Austin LLP, as and for its Complaint in this action against Defendants Oswaldo "Junior" Barajas ("Barajas"), USA Contracting Co, LLC ("USA Contracting"), Leah Raffles ("Raffles"), and Brian Wolff ("Wolff") (collectively, "Defendants") alleges as follows based upon its personal knowledge and upon information and belief as to all other matters:

## **NATURE OF THE ACTION**

1.      This emergency action for preliminary relief against Defendants Barajas and USA Contracting, and for permanent injunctive relief against all Defendants, arises out of Defendant Barajas's breach of non-competition, non-solicitation, and non-disclosure obligations, to which he agreed in connection with the sale of his business to Legacy.

2.      Barajas founded SNR Global, LLC d/b/a Southern Roofing and Renovations and its affiliates ("Southern"), which is an exterior remodeling company.  In January 2024, Legacy

purchased Southern for over $50 million. Barajas was paid over $4 million in cash and received additional rollover equity as part of the sale. After the sale, he stayed on as a full-time employee in senior management for Southern, and in January 2025 he was named Regional Sales Director. In April 2025, Legacy learned that Barajas had attempted to start a competing company, and terminated his employment along with two other Southern employees who were conspiring with him. After terminating Barajas' employment, Legacy has since discovered evidence that:

- **Defendants _admit_ that their new company performs the exact same kind of work prohibited by Barajas' noncompetition agreement, including "roofing work" and other "construction work,"** that Barajas "has been involved in this kind of construction work mainly related to his property rentals," and that the new company has performed "one job so far in Minnesota." Tr. of Temporary Restraining Order Hr'g dated Jun. 26, 2025 ("TRO Hr'g Tr.") at 12:18–13:7; 18:17–24; 20:10–17.

- **Texts show that Barajas has actively solicited Southern's employees.** Texts show that Barajas planned to meet with then-current Southern employees in Nashville (after those Southern employees traveled to Nashville at Southern's expense) to plan the competing company. Texts with another Southern employee, Raffles, show that Barajas promised her an equity interest in the new competing company.

- **Barajas has used those employees to steal Southern's confidential information and trade secrets in aid of his new competing business.** Raffles' texts show that she and Barajas were stealing Southern's training content and simply "rebranding" it to use with the new company. Raffles further told another Southern employee

that she was helping Barajas's new company by drafting the standard operating procedures ("SOPs") and sales documents – and Company records show that she downloaded over 20 company files since March 2025, including multiple Southern SOPs and sales training documents.

- **Barajas and his co-conspirators are actively trying to hide his involvement and destroy relevant evidence.** Text messages show that Barajas has actively attempted to conceal his involvement in his new competing company by leaving his name off of the organizational documents until his non-compete clause expires. Another employee, Raffles, deleted her browser history on her work computer ***the same day*** that she realized she was going to be questioned by the Company. One of the former employees who conspired with Barajas (David Knight) has refused to return his two company-owned laptops.

### THE PARTIES

3.    Legacy is a Minnesota limited liability company. The sole member of Legacy is Legacy Restoration Intermediate Holdings, LLC, a Delaware limited liability company. Legacy acquired Southern in 2024. As part of Legacy's family of companies, Southern expanded Legacy's Midwest-based business to the southern United States with operations in 8 states across the South.

4.    Upon information and belief, Defendant Barajas is a resident of the state of Tennessee, residing at 1167 Ewing Way, Clarksville, TN 37043 and 1229 Morstead Drive, Clarksville, TN 37042.

5.    Upon information and belief, Defendant USA Contracting is a Tennessee limited liability company, with a principal place of business at 711 Providence Blvd., Clarksville, TN 37042. Upon information and belief, Defendant Brian Wolff is a member of USA Contracting, and he is a resident of the state of Tennessee.

6.    Upon information and belief, Defendant Leah Raffles is a resident of the state of Tennessee, residing at 1200 Broadway, Apt 1302, Nashville, TN 37203.

7.    Upon information and belief, Defendant Brian Wolff is a resident of the state of Tennessee, residing at 2016 Queens Bluff Way, Clarksville, TN 37043.

### JURISDICTION AND VENUE

8.    Jurisdiction is proper in this Court because Barajas consented to the jurisdiction of this Court pursuant to Section 11.13 of the parties' Contribution and Securities Purchase Agreement (the "Purchase Agreement").[1]

> 11.13   Consent to Jurisdiction.
>
> EACH OF THE PARTIES HERETO: (A) CONSENTS TO SUBMIT ITSELF TO THE EXCLUSIVE PERSONAL JURISDICTION OF (I) THE FEDERAL COURTS SITTING IN THE SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE COUNTY OF NEW YORK AND (II) ANY NEW YORK STATE COURT LOCATED IN THE COUNTY OF NEW YORK IN CONNECTION WITH ANY CLAIM, DISPUTE OR CAUSE OF ACTION (WHETHER IN CONTRACT OR IN TORT, AT LAW OR IN EQUITY OR OTHERWISE) THAT ARISES OUT OF THIS AGREEMENT OR ANY OF THE TRANSACTIONS: (B) AGREES THAT IT WILL NOT ATTEMPT TO DENY OR DEFEAT SUCH PERSONAL JURISDICTION BY MOTION OR OTHER REQUEST FOR LEAVE FROM ANY SUCH COURT; AND (C) AGREES THAT IT WILL NOT BRING ANY ACTION RELATING TO THIS AGREEMENT OR ANY RELATED DOCUMENT OR ANY OF THE TRANSACTIONS OR THEREBY IN ANY COURT OTHER THAN A FEDERAL COURT SITTING IN THE SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE COUNTY OF NEW YORK OR A NEW YORK STATE COURT UNLESS VENUE WOULD NOT BE PROPER UNDER RULES APPLICABLE IN SUCH COURTS.

9.    Moreover, jurisdiction over Raffles and Wolff is appropriate because text messages suggest that they were aware of the existence of the Purchase Agreement, which includes the above mandatory forum selection clause. As co-conspirators in Barajas' efforts to violate the Purchase

---

[1] Copies of the Purchase Agreement, both in redacted form and unredacted form under seal, are filed concurrently herewith and incorporated herein.

Agreement's terms, Raffles and Wolff are closely related to the dispute at issue here such that the Purchase Agreement's forum selection clause applies to them.

10.     Venue is proper in this Court pursuant to New York CPLR 501 in light of Section 11.13 of the Purchase Agreement.

**FACTUAL BACKGROUND**

**I.  Barajas and Other Sellers Receive Millions of Dollars in Exchange for the Sale of Southern.**

11.     In January of 2024, the parties entered into the Purchase Agreement.

12.     Pursuant to the Purchase Agreement, each Seller (as defined in the Purchase Agreement) received a payment in exchange for the sale of Southern in proportion to the shares of Southern that each Seller owned. Barajas received approximately $4 million in cash (and other consideration) in exchange for his equity. After the sale, he stayed on as a full-time employee of Southern Roofing and Renovations, LLC, as a member of Southern's senior management, and in January 2025 he was named Regional Sales Director.

13.     In the Purchase Agreement, Barajas and the other Sellers also agreed to several covenants.  Barajas agreed to a non-disclosure and confidentiality covenant to protect the confidential information of Southern (the "Nondisclosure Covenant"):

6.6     Confidentiality.

(a)     After the Closing, and forever thereafter, each Seller shall not, and each shall cause its respective Seller Related Parties not to, at any time, directly or indirectly, communicate, divulge, disclose, furnish or make accessible to any Person any aspect of the Confidential Information (as defined below) or use (other than for tax, legal, compliance or reporting purposes) the Confidential Information in any manner or use any of the Confidential Information other than for the benefit of the Purchaser and the Company Group. Without in any way limiting each Seller's obligations in the preceding sentence not to disclose Confidential Information, a Seller will not be deemed to be in breach of this Agreement solely by reason of remembering (through unaided memory only), retaining and using its increased knowledge (through unaided memory only). For the purposes hereof, a memory is unaided if such natural person has not intentionally memorized the information for the purpose of retaining or subsequently using or disclosing the information.

(b)     As used in this Section 6.6, "*Confidential Information*" means all privileged, proprietary or confidential information (including, without limitation, oral, written and electronic information) related to or concerning the Company Group, including, without limitation, confidential techniques, processes, recipes, formulations, know-how, financial information, copyrights, patents, trademarks, trade names, slogans, logos, designs, service marks, computer software programs and systems, databases, magnetic media, systems and programs, trade secrets, business lists, customer lists, prospects lists, client lists, supplier lists, employee personnel files, engineering data, marketing data, marketing opportunities, sales data, logs, consultants' reports, budgets, ratings, forecasts, format strategy, financial reports and projections, other financial data, tapes and electronic data processing files, accounting journals and ledgers, accounts receivable records and sales, operating, marketing and business plans, and all analyses, compilations, forecasts, interpretations, studies, notes, other materials and portions thereof prepared by any Seller or any of their respective Seller Related Parties or any of their Representatives, or otherwise on any of the their behalf, that contain, reflect or are based, in whole or in part, on such information, including, without limitation, those stored in electronic format. The term "Confidential Information" shall not include any information that (i) is or becomes generally available to the public (including general industry knowledge) other than as a result of disclosure by any Seller or any of their respective Seller Related Parties or to the knowledge of such Persons and their Representatives, by any Person in violation of an obligation or duty of confidentiality, (ii) is required to be disclosed by any Seller or any of their respective Seller Related Parties pursuant to the terms of a valid Order issued, promulgated or entered by or with any Governmental Entity of competent jurisdiction or other requirement of Applicable Laws or (iii) is being disclosed in connection with any Proceeding to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement, the Related Documents or the transactions contemplated hereby or thereby.

14.     Barajas also agreed to a non-competition covenant, which prohibits him from participating in any "business of exterior residential and multi-family restoration (including but not limited to the repair or replacement of roofing, siding, gutters and windows), residential and

multi-family renovations, interior and exterior residential and multi-family maintenance and related services, sales and lead generation activities" for a period of five years[2] after the closing of the transaction (the "Noncompete Covenant"):

> 6.7    Non-Competition.
>
> Each Major Seller and Minor Seller hereby acknowledges that due to its position with and relationship to the Company, it has been responsible for developing and maintaining (in whole or in part) the goodwill of the Company Group. To protect the Company Group's trade secrets and relationships and goodwill with customers, except as set forth on Schedule 6.6, for the applicable Restriction Period, each Major Seller and Minor Seller shall not, and shall not permit any of their respective Seller Related Parties to, in any manner, directly or indirectly, participate or engage in, or manage, operate, consult with, render services for or represent or own, directly or indirectly, alone or as a partner, joint venturer, member, equityholder, employee or otherwise, any entity that is engaged in, the Business. Notwithstanding the foregoing, this Section 6.7 shall not restrict any Seller from (A) passive ownership of three percent (3%) or less of any entity whose securities have been registered under the Securities Act of 1933, as amended, or Section 12 of the Exchange Act, (B) owning any amount of equity interest in, or being an officer, director, employee or service provider of, Purchaser or any of its Affiliates. The obligations under this Section 6.7 shall apply throughout the world.

15.    And Barajas agreed to a non-solicitation covenant, which prohibits him for soliciting Southern employees, as well as suppliers and customers, for the same five-year period (the "Nonsolicit Covenant"):

---

[2] The Noncompete Covenant and Nonsolicit Covenant (defined below) are subject to time limitations. Specifically, they are each limited to the "Restriction Period" applicable to each individual Seller. As a "Major Seller," as that term is defined in the Purchase Agreement, Barajas was obligated to comply with the Noncompete Covenant and Nonsolicit Covenant for a period of five years following the closing of the transaction evidenced by the Purchase Agreement, which occurred on January 5, 2024. Accordingly, Barajas is obligated to comply with the Noncompete Covenant and Nonsolicit Covenant until January 5, 2029.

6.8    Non-Solicitation.

(a)    Each Seller hereby agrees that neither it nor any of its respective Seller Related Parties will, during their respective Restriction Period, directly or indirectly through another Person (i) induce or attempt to induce any employee, officer, director or manager of any Company Group member or the Purchaser Group member to leave the employ of any Company Group member or Purchaser Group member, or in any way interfere with the relationship between any Company Group member or Purchaser Group member, on the one hand, and any employee, officer, manager or director thereof, on the other hand, (ii) solicit to hire or hire any Person who was an employee, officer, manager or director of any Company Group member or Purchaser Group member until twelve months after such individual's employment or other relationship with any Company Group member or Purchaser Group member has been terminated or (iii) induce any customer, supplier, or licensee of any Company Group member to cease doing business with any Company Group member or in any way interfere with the relationship between any Company Group member, on the one hand, and any such customer, supplier, or licensee, on the one hand.

Collectively, these three covenants are referred to herein as the "Purchase Agreement Covenants."

16.    The Purchase Agreement also included a broad indemnity provision. As part of that indemnity provision, the Sellers agreed that they would be jointly and severally liable to Legacy for the breach of any covenant, agreement, or obligation to be performed by the Sellers.

**ARTICLE VIII.**

**INDEMNIFICATION**

8.1    Indemnification Generally.

(b)    Indemnification by the Sellers.

(i)    Subject to the other terms and conditions of this ARTICLE VIII, the Sellers, jointly and severally, agree to indemnify and hold harmless the Purchaser Indemnitees from any and all Losses they may suffer, sustain or incur arising from, in connection with, or as a result of:

(B)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by any Seller or, to the extent required to be performed at or prior to the Closing, the Company Group pursuant to this Agreement;

II.    **Barajas and Wolff Jointly Own a Car Dealership Together Called "USA Fleet Sales."**

17.    Upon information in belief, in or around October 2024, Wolff and Barajas went into business together with respect to a car dealership they named "USA Fleet Sales."  A publicly-available news report dated December 23, 2024, shows Wolff and Barajas together talking about their jointly-owned business.[3]

III.    **Barajas Conspires with Wolff, Raffles, and Other Company Employees to Breach the Purchase Agreement and Steal the Company's Confidential Information.**

18.    In or around mid-March 2025, Barajas began soliciting Company employees and conspiring with them to steal Company information to launch his new competing company with Brian Wolff.

19.    Text messages show that Barajas has solicited Raffles to join Wolff's and Barajas' new competing business on or around March 28, 2025.  Raffles' text messages show that she intends to "sit for [her] [general contractor ('GC')] license" and that she "secured [herself] something that will make [her] indispensable with [Barajas] and protect [her] tenfold." When asked if Barajas had asked Raffles to obtain her GC license, Raffles responds that Barajas was "venting" about problems relating to GC licensure. Raffles then offered to obtain her own GC license, and Barajas indicated that he would be amenable to Raffles doing so and then procuring an equity interest in "every business that operated under [her] license."  The text messages also divulged the intimate involvement of Wolff, a Nashville-area entrepreneur and close personal friend of Barajas and Raffles, who Barajas and Raffles were working with to form the new company. The text messages show that Wolff would be the partner of the new roofing company at first, since Barajas

---

[3] The News Channel 5 Nashville report is available at: https://www.newschannel5.com/news/madison-business-owners-say-theyre-facing-major-financial-losses-due-to-break-ins

was subject to a non-competition covenant. But then, according to Raffles' text messages, Wolff

intended to sign over equity to Barajas "as soon as his noncompete runs out."

| Sender | Recipient | Date | Message |
|---|---|---|---|
| Leah Raffles | Barajas | 3/28/25 3:42 PM | I'm looking into it and I could probably take my GC in a few weeks and pass that bitch but there's one big thing is that I would need to be listed on the LLC for me to test. So what if you guys figured out a situation where like every branch I was a 10% equity partner so it's minimal but I can be listed on the LLC or partnership documentation and then everybody could use my license? Something to think about, but I'm looking at this right now and I could take this bitch and pass it and I would also be fueled by the fact that Kirtis failed it. |
| Leah Raffles | XXXXXX2743[4] | 3/28/25 5:49 PM | it's all right I just secured myself something that will make me indispensable with Junior and protect me tenfold we'll talk about it later |
| Leah Raffles | XXXXXX2743 | 3/28/25 5:57 PM | I was gonna ask you because we can just rebrand your training content and sell it to them when they quit and start their own roofing thing They're gonna start a roofing business as Brian is the partner because the other guys don't have a noncompete. Only Junior does so we're just gonna do it as Brian [Wolff] be in the partner and then he'll sign over equity to Barajas as soon as his noncompete runs out. |

---

[4] Upon information and belief, and based on Raffles' contact list pulled from her work computer, the phone number ending in 2743 is Raffles' mother.

20.    The above text message also reveals Barajas' and Raffles' plans to "rebrand" the Southern "training content" and use it at their new company.

21.    Later that same day, Raffles' text messages include Barajas' and Raffles' conversations regarding the administrative steps that they need to take to set up their new corporate entity. They include discussions about leaving Barajas' name off of any documentation until after his non-competition covenant had expired, and they indicate that they would then add Barajas to the formation documents as soon as possible so that they could leverage his status as a "minority veteran" and Raffles' status as a woman to procure government contracts.

| Sender | Recipient | Date | Message |
|---|---|---|---|
| Leah Raffles | Barajas | 3/28/25 6:47 PM | Bc once you're outside of your non compete we can get you added to the LLC and then we can do gov contracts…minority veteran and a woman listed on the company….WE GETTING THEM ALLLLLLLLLLL |
| Leah Raffles | Barajas | 3/28/25 8:58 PM | and hunting Federal contracts with you and I listed we're gonna get awarded all of them because you're a minority and a veteran and I'm a woman that lake puts us above everybody on federal contracts |

22.    On or around this same time in March 2025, Skelton writes that Knight should plan to be in Nashville for two days for "sales and leadership meetings." This message referred to meetings that Skelton and Knight had planned with Barajas to plan the operations at Barajas' new company.



23.    On March 29, 2025, another text message from this group string indicates that Skelton and Knight had appointments scheduled with Barajas, and Skelton states that he was "extremely excited about the next few weeks."



## IV.    Legacy Discovers Barajas and Other Southern Employees are Conspiring to Start a Competing Business in Violation of the Purchase Agreement.

24.    In or around April 2025, a Southern employee reported that he had overheard the drunken conversations of Barajas and several other Southern employees at a bar.  The employee revealed that Barajas and three Southern employees—Skelton, Knight, and Raffles—were discussing leaving Southern and starting their own company that would directly compete against Southern. At the time, Barajas, Skelton, Knight, and Raffles each worked for Southern and were based in Tennessee.

25.    The employee further said that Barajas intended to keep his name off of any company formation documents, such as the limited liability company agreement, in order to avoid detection. Additionally, the employee said that Barajas had said that he had instructed Raffles to

begin drafting standard operating procedures, pay structures, and similar administrative documents for the new company. Upon information and belief, Raffles drafted and provided these documents for the new company using Southern's trade secret and confidential information.

26.    Southern confronted Barajas based on this information. Barajas did not deny that he had started a competing company. As a result, Southern terminated Barajas' employment on April 10, 2025.

27.    On April 18, 2025, Southern terminated Skelton's and Knight's employment. It was determined that there was insufficient evidence to terminate Raffles' employment at that time.

28.    Since being fired, Knight has refused to return his two company-issued computers. Legacy is concerned that Knight intends to help Barajas misappropriate company information and property, destroy evidence of his involvement in the conspiracy that is the subject of this complaint, or otherwise misuse the data and information on Knight's work laptops while they remain in Knight's possession illicitly.

**V.    Wolff Creates USA Contracting And – As Planned – Hides Barajas' Ownership.**

29.    Upon information and belief, on April 28, 2025, a little over two weeks after Barajas was terminated, Wolff filed formation documents for the new entity formed to compete against Southern. The articles of association filed by Wolff on behalf of USA Contracting disclose that the nature of the business is "Residential Remodelers." Wolff disclosed that USA Contracting had "six or fewer members" but conspicuously left the number of members blank.

**Tracking Number**
B2025245535

# Articles Of Organization

Division of Business and Charitable Organizations
**Department of State**
State of Tennessee
312 Rosa L. Parks Avenue, 6th Floor
Nashville, Tennessee 37243
Phone: 615-741-2286
sos.tn.gov/businesses

Control #:  002017422
Filed: 04/28/2025  11:19 AM
Tre Hargett
Secretary of State

**Tre Hargett**
Secretary of State

---

## Entity Information

**Entity Name:** USA CONTRACTING CO LLC

**Entity Type:** Limited Liability Company

**Fiscal Year Ending Month:** December

**Additional Designation:** *(No additional designation)*

**Series LLC ?**
☐ Yes  ☑ No

**Principal Office Address**
711 Providence Blvd
Clarksville, TN 37042
Montgomery County, USA

**Mailing Address**
711 Providence Blvd
Clarksville, TN 37042
Montgomery County, USA

**Period of Duration:**
Perpetual

**Will this filing have a delayed effective date?**
☐ Yes  ☑ No

**Nature of Business (NAICS):**
236118 - Residential Remodelers

**Other Provisions:**
*(No other provisions)*

Do you have additional uploads you would like to attach to this filing?
☐ Yes  ☑ No

---

## Registered Agent Information

USA CONTRACTING CO LLC
711 Providence Blvd
Clarksville, TN 37042, USA

---

## Member Information

**The Limited Liability Company will be:** Member Managed

**Do you have six or fewer members at the date of this filing?**
☑ Yes  ☐ No

**Number of Members at the date of filing:**

Will this entity be registered as an Obligated Member Entity (OME)
☐ Yes  ☑ No

Page 1 of 2



30.    Google Maps shows that the headquarters for USA Contracting is in a warehouse labeled "WOLFF" and at the same address as "Wolff Auto Sales," believed to be another business owned by Wolff.  Notably, "**_USA_** Contracting" follows the same naming convention as Barajas' and Wolff's other jointly-owned business, "**_USA_** Fleet Sales."



**VI.    Barajas, Wolff, and Raffles Work Together to Launch USA Contracting**

31.    Upon information and belief, throughout the month of May, Barajas, Wolff, and Raffles conspired together to launch USA Contracting.

32.    On May 14, 2025, about two weeks after Wolff formed USA Contracting, Raffles asked Barajas for a picture of Wolff and Barajas so that she can create the new company's vendor packet.

| Sender | Recipient(s) | Date | Message |
|---|---|---|---|
| Leah Raffles | Barajas | 5/14/25 12:38 AM | I need that picture of you and Brian [Wolff] together that you used in ChatGPTT so that I can finish this damn vendor packet |

33.    That same week in May 2025, Raffles downloaded proprietary and trade secret files of the Company from the Company's systems onto her work computer, including those related to contracts, customer agreements, and insurance company SOPs.  *See* McComas Aff. at Ex. G.

**VII.    Barajas Actively Solicits Raffles to Leave Southern and Work at Newly-Formed USA Contracting**

34.    In June 2025, a few weeks after Wolff formed USA Contracting, Barajas offered Raffles a job "over here," including pay of "3 months upfront of your current salary" because "***me and Brian have your back***."

| Sender | Recipient(s) | Date | Message |
|---|---|---|---|
| Leah Raffles | XXXXXX2743 | 6/6/25 5:20 PM | I do love Junior. he just said dont stress, if they try and push you out or under Christina, **I will make it work for you over here.  I'll just pay you 3 months upfront of your current** |

| | | | **salary** and by the time you push these guys to perform me me in those three months I'll be able to afford your salary. **I just dont want you to worry because me and Brian have your back.** |
|---|---|---|---|

35.     Just five days after that, Raffles' texts reveal that Barajas called Raffles (who was still a Southern employee) and said, "start planning your exit," because "they need me sooner than he thought."  He also "sweetened the deal" by giving her additional salary and profit share.

| Sender | Recipient(s) | Date | Message |
|---|---|---|---|
| Leah Raffles | XXXXXX2743 | 6/11/25 3:32 AM | Junior just called me and said "start planning your exit" …, they need me sooner than he thought and he just sweetened the deal that he's gonna figure out how to pay me the salary that I want and he's also going to give me profit share in every company that I have to put my hands on |

36.     The contents of Raffles' laptop further demonstrate the breadth of this conspiracy. In late 2024 and early 2025, Raffles downloaded numerous Southern documents, such as training videos and scripts. Raffles continued to download Southern files after business hours even after Barajas, Skelton, and Knight had been terminated. Additionally, the imaging of Raffles' laptop indicated that Raffles had deleted her web browser history the night before she was scheduled to be interviewed by the Company.

**VIII.    Defendants Admit to Additional Details Indicating a Conspiracy to Compete
Against Legacy and Southern**

37.    On June 26, 2025, this Court granted a temporary restraining order against Barajas.
The TRO Hearing was transcribed by a court reporter, and that transcript reflects several key
admissions made by Defendants, including:

- That a "new entity" formed by Defendants "has done roofing work …. My client
  has been involved in this type of construction work mainly related to his property
  rentals." TRO Hr'g Tr. 18:18–24.

- That "this new entity" had "performed the one job so far in Minnesota" and is "a
  very nascent business that was formed by my client." TRO Hr'g Tr. 12:20–13:3.

- That Barajas would not object to being enjoined from performing roofing work
  related to insurance proceeds: "as long as he is not prohibited from working with
  the company, to the extent that it performs HVAC, plumbing work, or water
  mitigation work, and so long as the order enjoining him from competing relates
  to the primary business, and my understanding the only business, of performing
  roofing work paid for through insurance proceeds." TRO Hr'g Tr. 20:10–15.

**COUNT ONE**
**BREACH OF CONTRACT AGAINST OSWALDO BARAJAS — NON-COMPETITION**

38.    Legacy incorporates by reference all allegations above as though fully set forth
herein.

39.    Barajas is a party to the Purchase Agreement, including the Purchase Agreement
Covenants, and is obligated to comply therewith.

40.    The Purchase Agreement's Non-Compete Covenant provides that Barajas "shall
not, … in any manner, directly or indirectly, participate or engage in, or manage, operate, consult

with, render services for or represent or own, directly or indirectly, ... any entity that is engaged in, the Business."

41.     The Purchase Agreement defines the "Business" as "the business of exterior residential and multi-family restoration (including but not limited to the repair or replacement of roofing, siding, gutters and windows), residential and multi-family renovations, interior and exterior residential and multi-family maintenance and related services, sales and lead generation activities."

42.     Legacy discovered that Barajas had been formulating plans with Wolff, Knight, Skelton, Raffles, and potentially others to leave Southern and begin a new company, USA Contracting, that would compete directly with Southern, and therefore would engage in the Business as defined in the Purchase Agreement.

43.     The employee's statements, text messages, and other evidence cited above clearly demonstrate that Barajas took steps to form a new company that would compete directly against Southern.

44.     Defendants have admitted that their new entity performs "roofing work" and other "construction work," and that Barajas has a financial interest in the new company and "has been involved in this type of construction work mainly related to his property rentals." *See* TRO Hr'g Tr. 18:17–24; *see id.* at 20:10–17.

45.     As a result of the foregoing, Barajas is in breach of the Purchase Agreement's Non-Compete Covenant.

46.     As a direct and proximate result of Barajas's breach of the Purchase Agreement's Non-Compete Covenant, Legacy has suffered and will continue to suffer irreparable harm.

## COUNT TWO
## BREACH OF CONTRACT AGAINST OSWALDO BARAJAS — NON-SOLICITATION

47.     Legacy incorporates by reference all allegations above as though fully set forth herein.

48.     Barajas is a party to the Purchase Agreement, including the Purchase Agreement Covenants, and is obligated to comply therewith.

49.     The Purchase Agreement's Non-Solicit Covenant provides that Barajas agreed that he would not "directly or indirectly through another Person (i) induce or attempt to induce any employee, officer, director or manager of [Legacy or Southern] to leave the employ of [Legacy or Southern], or in any way interfere with the relationship between [Legacy or Southern], on the one hand, and any employee, officer, manager or director thereof, on the other hand," nor would he "(ii) solicit to hire or hire any Person who was an employee, officer, manager or director of [Legacy or Southern] until twelve months after such individual's employment or other relationship with [Legacy or Southern] has been terminated."

50.     Skelton, Knight, and Raffles worked as employees at Southern until their terminations.

51.     Prior to their terminations, Skelton, Knight, and Raffles were approached by Barajas and asked to come work for the new competing business that Barajas intended to establish. Upon information and belief, Barajas has continued to conspire with Brian Wolff to solicit Skelton and Knight after their termination from Southern in further violation of Barajas' ongoing nonsolicitation obligations.

52.     Text messages from Raffles' computer indicate that Barajas was actively soliciting her to leave Southern and work with him at this new company, offering her a compensation package and discussing the possibility of her owning equity in the new entity.

53.     As a result of the foregoing, Barajas is in breach of the Purchase Agreement's Non-Solicit Covenant.

54.     As a direct and proximate result of Barajas' breach of the Purchase Agreement's Non-Solicit Covenant, Legacy has suffered and will continue to suffer irreparable harm.

## COUNT THREE
## BREACH OF CONTRACT AGAINST OSWALDO BARAJAS — NON-DISCLOSURE AND CONFIDENTIALITY

55.     Legacy incorporates by reference all allegations above as though fully set forth herein.

56.     Barajas is a party to the Purchase Agreement, including the Purchase Agreement Covenants, and is obligated to comply therewith.

57.     The Purchase Agreement's Confidentiality Covenant provides that Barajas "shall not, … at any time, directly or indirectly, communicate, divulge, disclose, furnish or make accessible to any Person any aspect of the Confidential Information (as defined below) or use (other than for tax, legal, compliance or reporting purposes) the Confidential Information in any manner or use any of the Confidential Information other than for the benefit of [Legacy and Southern]."

58.     The Purchase Agreement defines "Confidential Information" as "all privileged, proprietary or confidential information (including, without limitation, oral, written and electronic information) related to or concerning [Southern]."

59.     Raffles downloaded Southern files over the course of several months between December 2024 and June 2025. Raffles' text messages and statements from the Southern employee suggest that Raffles and Barajas intended to re-brand proprietary Southern documents such as standard operating procedures and pay structures for use at their newly formed business.

60.     On information and belief, Barajas directed and assisted Raffles in the downloading and misappropriation of this Confidential Information.

61.     As a result of the foregoing, Barajas is in breach of the Purchase Agreement's Confidentiality and Non-Disclosure Covenant.

62.     As a direct and proximate result of Barajas's breach of the Purchase Agreement's Confidentiality and Non-Disclosure Covenant, Legacy has suffered and will continue to suffer irreparable harm.

**COUNT FOUR**
**MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK COMMON LAW AGAINST BARAJAS**

63.     Legacy incorporates by reference all allegations above as though fully set forth herein.

64.     The roofing and exterior renovation industry is a unique one in which many of the practices that would typically give rise to the creation of protected trade secrets, such as pricing and the calculation of margins, are strictly regulated. Instead, the trade secrets on which companies build their success are the training methodologies and strategies that they create and implement and the talented salesforce that is trained using those methodologies and strategies. Much of the information that Barajas and Raffles downloaded and intended to rebrand for use in their competing business, therefore, constitutes trade secrets of Legacy subject to protection under New York law.

65.     This information is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. This information is limited in distribution within Legacy and is not readily available to the public or to Legacy's competitors.

66.     Legacy has expended substantial efforts and resources to develop this information, which would be of great value to a competitor.

67.     Legacy has also taken significant measures to maintain the confidentiality of this information, including by requiring employees to practice good information technology security hygiene, entering into confidentiality agreements such as the Purchase Agreement Confidentiality Covenant, and promptly repossessing (or attempting to repossess) the laptops of former employees to protect all company information stored thereon.

68.     Upon information and belief, Defendants directed Raffles and others to unlawfully retain and store Legacy's trade secret information without its consent, and with the intent to use it in a manner to cause economic harm to Legacy, all the while knowing that the information was entitled to protection as Legacy's trade secrets.

69.     Legacy derives a significant economic benefit from the above-described trade secrets.

70.     Legacy faces an immediate threat of continuing irreparable harm, for which Legacy lacks an adequate remedy at law, from Defendants' misappropriation of Legacy's trade secrets.

**COUNT FIVE**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE TENNESSEE UNIFORM TRADE SECRETS ACT, TENN. CODE ANN. § 47-25-1701 *ET SEQ.*, AGAINST ALL DEFENDANTS**

71.     Legacy incorporates by reference all allegations above as though fully set forth herein.

72.     Barajas and Raffles had access to highly confidential techniques, processes, training materials, and operating procedures of Legacy. Wolff and USA Contracting had access to this same information through Barajas and Raffles.

73.     The secrecy of this confidential information is ensured by the use of strict employee policies and procedures set forth in the employee handbook to which Barajas and Raffles were subject during their employment with Southern. Barajas was subject to additional restrictions governing the Company's trade secrets pursuant to the Purchase Agreement.

74.     These confidential techniques, processes, training materials, and operating procedures would be economically valuable to competitors, especially in light of the unique circumstances of the roofing and exterior home renovation industry, in which much of the competitive advantage that one company has over another is based on the skillset and effectiveness of a company's salesforce.

75.     This information would not be easily ascertainable by competitors using proper means.

76.     Defendants impermissibly retained this trade secret information with the intent to reuse it for their own personal gain as they established their competing business. They willfully and maliciously stole Legacy's trade secrets and recycled it for use at their new competing business, thereby causing irreparable harm and economic detriment to Legacy.

77.     Such misappropriation of Legacy's trade secrets is detrimental to Legacy because it will undermine Legacy's competitiveness in the market and cause damages and unquantifiable loss to Legacy's business interests.

78.     Because the misappropriation was willful and malicious, Legacy is entitled to exemplary damages and reasonable attorneys' fees.

**COUNT SIX**
**CIVIL CONSPIRACY AGAINST ALL DEFENDANTS**

79.     Legacy incorporates by reference all allegations above as though fully set forth herein.

80.    Barajas and USA Contracting, along with Wolff, Skelton, Knight, Raffles, and potentially others, have been in discussions to form a competing business, poach additional employees of Legacy and Southern, and utilize Southern's proprietary information for that competing business's gain.

81.    As discussed above with respect to Barajas, this conduct constitutes breach of the Purchase Agreement Covenants, to which Barajas is subject.

82.    Barajas and USA Contracting, working in concert, took significant steps to establish this competing business and thereby violate the Purchase Agreement Covenants.

83.    The Defendants intended to found a competing business and thereby circumvent and violate the obligations set out in the Purchase Agreement Covenants.

84.    Additionally, Barajas and USA Contracting worked in concert with one another to effectuate Barajas' violation of the Purchase Agreement Covenants and to misappropriate Legacy's and Southern's confidential information and trade secrets. They did so with the intent of circumventing and avoiding Barajas' obligations under the Purchase Agreement Covenants and with the intent to misuse Legacy's and Southern's valuable confidential and trade secret information.

85.    As a direct and proximate result of Defendants' conspiracy, Legacy has experienced and will continue to experience significant irreparable harm and suffer damages.

**COUNT SEVEN**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS**

86.    Legacy incorporates by reference all allegations above as though fully set forth herein.

87.   In light of Defendants' continued efforts to violate the Purchase Agreement Covenants and the irreparable and ongoing harm caused thereby, Legacy is entitled to preliminary and permanent injunctive relief.

88.   No other remedies at law are adequate to address the harm to Legacy if Barajas continues to violate the Purchase Agreement Covenants and Defendants continue to use the Company's confidential, proprietary, and trade secret information.

89.   Legacy has suffered and will continue to suffer irreparable harm that cannot be adequately compensated through monetary damages as a direct and proximate result of Barajas' breaches of the Purchase Agreement and Defendants' theft of proprietary and confidential information and trade secrets.

90.   Legacy is entitled to injunctive relief as to Defendants, enjoining them from engaging in any conduct in violation of the Purchase Agreement Covenants and theft of proprietary and confidential information and trade secrets.

## **PRAYER FOR RELIEF**

WHEREFORE, Legacy respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

1)   Judgment in its favor and against Defendants as to all claims;

2)   Barajas and USA Contracting, as well as anyone acting in concert with them, be enjoined preliminarily, and all Defendants be enjoined permanently, from breaching any of the Purchase Agreement Covenants and from misappropriating the Company's proprietary, confidential, and trade secret information;

3)  Monetary damages in an amount to be determined at trial;

4)  Exemplary damages pursuant to the Tennessee Uniform Trade
    Secrets Act;

5)  That Legacy be awarded all pre-judgment interest allowable by
    law;

6)  That Legacy be awarded its costs and attorneys' fees as
    allowable by law; and

7)  Granting such other and further relief as the Court deems just
    and proper.

Dated: New York, New York                    Respectfully submitted,

July 1, 2025                                 */s/ Melissa Colón-Bosolet*

                                             Melissa Colón-Bosolet
                                             mcolon-bosolet@sidley.com
                                             Sidley Austin LLP
                                             787 Seventh Avenue
                                             New York, NY 10019
                                             Phone: (212) 839-5300
                                             Fax: (212) 839-5599
                                             *Attorneys for Plaintiff*
                                             *Legacy Restoration, LLC*