**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
**LEGACY RESTORATION, LLC,**

                    **Plaintiff.**

                **-against-**

**OSWALDO "JUNIOR" BARAJAS, JOHN DOE
ENTITY 1, LEAH RAFFLES, and BRIAN WOLFF,**

                    **Defendants.**
-----------------------------------------------------------------------X

Case No.: 1:25-cv-5319 (LJL) (OTW)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

**KUSHMAKOV LAW, P.C.**
Eduard Kushmakov, Esq.
7150 Austin Street, Suite 205
Forest Hills, NY 11375
(646) 694-0248 (office)
eduard@kushmakovlaw.com

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................... 6

FACTS ...................................................................................................................................... 7

ARGUMENT .............................................................................................................................. 7

I.    LEGAL STANDARD .......................................................................................................... 7

II.   THERE IS NO LIKELIHOOD OF SUCCESS ON THE MERITS ................................. 8

   A.   The Non-Competition Clause is Unenforceable as a Matter of Law ............................ 9

   B.   Barajas Did not Violate the Non-Soliciation Clause ..................................................... 11

   C.   Barajas Did Not Violate the Non-Disclosure and Confidentiality Clauses ................... 12

   D.   Defendants Did Not Misappropriate Any Trade Secrets ............................................... 13

III.  PLAINTIFF FAILS TO ESTABLISH IRREPARABLE HARM .................................... 15

   E.   Plaintiff's Application is Based Entirely on Inadmissible Hearsay that is Far From
   Inherently Trustworthy ...................................................................................................... 16

   F.   Plaintiff failed to Establish That Barajas is a Direct Competitor ................................... 17

   G.   Any Alleged Harm is Speculative .................................................................................. 19

IV.   A BALANCING OF THE EQUITIES TIPS IN DEFENDANTS' FAVOR .................... 20

CONCLUSION ........................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

Andino v. Fischer,
  555 F. Supp. 2d 418 (S.D.N.Y. 2008)........................................................................ 6

Bell & Howell v. Masel Supply Co.,
  719 F.2d 42 (2d Cir.1983)........................................................................................ 14

Borey v. National Union Fire Ins. Co.,
  934 F.2d 30 (2d Cir.1991)........................................................................................ 14

Capstone Logistics Holdings, Inc. v. Navarrete,
  No. 17-CV-4819, 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018)........................... 19

Centimark Corp. v. Tect Am. Corp.,
  No. 08-CV-7323, 2010 WL 11606646 (N.D. Ill. Apr. 6, 2010)............................ 19

Cenveo Corp. v Diversapack LLC,
  09 CIV. 7544 (SAS), 2009 WL 3169484 (S.D.N.Y. Oct. 1, 2009)....................... 16

Core SWX, LLC v. Vitec Grp. US Holdings, Inc.,
  No. 21-CV-1697 (JMA) (JMW), 2022 U.S. Dist. LEXIS 125198 (E.D.N.Y. July 14, 2022) 12

Coscarelli v. ESquared Hosp. LLC,
  364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019)........................................................... 18

D.S. v. New York City Dept. of Educ.,
  No. 22-CV-10641 (GHW) (RFT), 2024 WL 2159785 (S.D.N.Y. Apr. 29, 2024) ................ 13

EarthWeb, Inc. v Schlack,
  71 F. Supp. 2d 299 (SDNY 1999) ............................................................................ 8

Elsevier Inc. v Doctor Evidence, LLC,
  17-CV-5540 (KBF), 2018 WL 557906 (SDNY Jan. 23, 2018)............................. 12

Estee Lauder Co., Inc. v. Batra,
  430 F. Supp. 2d 158 (S.D.N.Y. 2006)....................................................................... 9

Faiveley Transp. Malmo AB v. Wabtec Corp.,
  559 F.3d 110, 118 (2d Cir. 2009)................................................................ 6, 15, 18

Frantic, LLC v. Konfino,
  No. 13-CV-4516-AT, 2013 WL 5870211 (S.D.N.Y. Oct. 30, 2013) ...................... 9

Geritrex Corp. v. Dermarite Indus., LLC,
   910 F. Supp. 955 (S.D.N.Y. 1996) ..................................................... 15

GMH Capital Partners v Fitts,
   24-CV-00290 (ER), 2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) ......................................... 11

Hooda v. W.C.A. Serv. Corp.,
   2013 WL 2161821 (W.D.N.Y. May 17, 2013)..................................................... 6

Intertek Testing Servs, N.A., Inc. v. Pennisi,
   443 F. Supp. 3d 303 (E.D.N.Y. 2020) ..................................................... 8

Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.,
   323 F. Supp. 2d 525 (S.D.N.Y. 2004)..................................................... 9

JSG Trading Corp. v. Tray–Wrap, Inc.,
   917 F.2d 75 (2d Cir.1990)..................................................... 14

La Russo v. St. George's University School of Medicine,
   936 F. Supp. 2d 288 (S.D.N.Y. 2013)..................................................... 11

Mastrio v. Sebelius,
   768 F.3d 116 (2d Cir. 2014)..................................................... 7

Mastrovincenzo v. City of New York,
   435 F.3d 78 (2d Cir. 2006)..................................................... 7

Mazurek v. Armstrong,
   520 U.S. 968 (1997)..................................................... 7

Mullins v City of New York,
   626 F.3d 47 (2d Cir 2010)..................................................... 15

N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,
   883 F.3d 32 (2d Cir. 2018)..................................................... 7

N. Atl. Instruments, Inc. v. Haber,
   188 F.3d 38 (2d Cir. 1999)..................................................... 12

N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.,
   684 F.3d 286 (2d Cir. 2012)..................................................... 7

New York ex rel. Schneiderman v. Actavis PLC,
   787 F.3d 638 (2d Cir. 2015)..................................................... 6

Really Good Stuff, LLC v. BAP Investors, LLC,
   813 Fed. Appx. 39 (2d Cir. 2020)..................................................... 14

4

Register.com, Inv. v. Verio, Inc.,
    356 F.3d 393 (2d Cir. 2004)...................................................................................... 14

Rensselaer Polytechnic Inst. v. Appl Inc.,
    1:13-CV-0633 (DEP), 2014 WL 201965 (N.D.N.Y. Jan 15, 2014) ....................................... 16

Reuters Ltd. v. United Press Intern., Inc.,
    903 F.2d 904 (2d Cir. 1990)...................................................................................... 14

Robinson v. De Niro,
    739 F Supp 3d 33 (S.D.N.Y. 2023) ........................................................................... 10

Salinger v. Colting,
    607 F.3d 68 (2d Cir. 2010).................................................................................. 6, 19

Sapir v. Rosen,
    No. 20-CIV.-06191 (RA), 2021 U.S. Dist. LEXIS 189350 (S.D.N.Y. Sept. 30, 2021) ......... 13

SEC v. Musella,
    578 F. Supp. 425 (S.D.N.Y.1984) ............................................................................ 15

Sensus USA, Inc. v. Franklin,
    No. 15-742, 2016 WL 1466488 (D. Del. Apr. 14, 2016)...................................................... 19

Shepard Indus. v. 135 E. 57th St., LLC,
    1999 WL 728641 (S.D.N.Y. Sept. 15, 1999)................................................................... 18

Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.,
    No. 12-CIV.-2472 (AJB) (KSC), 2013 WL 11327092 (S.D. Cal. May 2, 2013) .................... 6

Sussman v. Crawford,
    488 F.3d 136 (2d Cir. 2007)........................................................................................ 7

Ticor Tit. Ins. Co. v. Cohen,
    173 F.3d 63 (2d Cir 1999).......................................................................................... 8

Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,
    60 F.3d 27 (2d Cir. 1995).......................................................................................... 7

Uni-World Capital L.P. v. Preferred Fragrance, Inc.,
    73 F. Supp. 3d 209 (S.D.N.Y. 2014).......................................................................... 18

Winter v. NRDC, Inc.,
    555 U.S. 7, 20 (2008)............................................................................................... 19

**Other Authorities**
David S. Levine, *Generative Artificial Intelligence and Trade Secrecy*, 3 J Free Speech L 559,
    575 (2023)............................................................................................................... 13

## **PRELIMINARY STATEMENT**

Plaintiff, a monolith in the roofing industry, has decided to lift its foot to stomp on three (3) individuals for allegedly conspiring to unfairly compete against it.  In cobbling together their contrived claims, Plaintiff relies on threadbare allegations requiring fatal leaps in logic that would leave even the most diehard conspiracy theorist second-guessing these claims.

This is because two (2) of the individual defendants were not subject to any restrictive covenants whatsoever, and Plaintiff has egregiously overreached as to the one (1) individual defendant who was subject to a restrictive covenant by requiring him not to compete or solicit for a period of *five (5) years worldwide!*

Plaintiff should know better, given that New York law (the law Plaintiff itself contractually agreed to in the event of a dispute) disfavors restrictive covenants that are overly broad in temporal and geographic scope.  But like in many David-and-Goliath battles, Plaintiff has no compunction in throwing its weight around in an effort to crush any enemy by scorched earth litigation.  Plaintiff does so while ignoring the elephant in the room – its restrictive covenants are so overbroad that New York law provides even a blue pencil provision cannot salvage them.

What's worse, Plaintiff has engaged in abuse of process through this litigation by utilizing this lawsuit to avoid its contractual obligations to an individual defendant it purchased his business from.  In doing so, Plaintiff has carelessly ensnared two (2) other individuals in this case and rely on material misrepresentations concerning the evidence purportedly supporting their claims of misappropriation of trade secrets and breach of contract.

As will be set forth in Defendants' declarations, Plaintiff is sorely mistaken as to the facts.

Moreover, Plaintiff is not entitled to relief as a matter of law because the restrictive covenants are overly broad such that even the blue pencil provision does not save them.

Accordingly, Plaintiff's motion for a preliminary injunction must be denied.

## FACTS

For the sake of brevity, Defendants respectfully refer the Court to their declarations for a recitation of the facts.

## ARGUMENT

### I.    LEGAL STANDARD

A temporary restraining order ("TRO"), like a preliminary injunction, "is an extraordinary remedy never awarded as of right." See Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010); see also, e.g., Andino v. Fischer, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) ("It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction.").

The party seeking such relief "must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." See New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation marks omitted). "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." See Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted).

By definition, a party cannot show a likelihood of success on, or serious questions going to, the merits of a claim if it does not, as here, even assert a claim. See Hooda v. W.C.A. Serv. Corp., 2013 WL 2161821, at *10 (W.D.N.Y. May 17, 2013); Sophia & Chloe, Inc. v. Brighton Collectibles, Inc., No. 12-CIV.-2472 (AJB) (KSC), 2013 WL 11327092, at *1 (S.D. Cal. May 2, 2013); Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan, 504 F.3d 818, 825 (9th Cir. 2007).

Moreover, a preliminary injunction "should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." See <u>Sussman v. Crawford</u>, 488 F.3d 136, 139–40 (2d Cir. 2007) (quoting <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis in original)).

In addition, it is worth noting that preliminary injunctions are prohibitory or mandatory. See <u>N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.</u>, 883 F.3d 32, 36 (2d Cir. 2018). "Prohibitory injunctions maintain the *status quo* pending resolution of the case; mandatory injunctions alter it." <u>Id.</u> The "status quo ... is[ ] 'the last actual, peaceable uncontested status which preceded the pending controversy.'" <u>Id.</u> at 37 (quoting <u>Mastrio v. Sebelius</u>, 768 F.3d 116, 120 (2d Cir. 2014) (*per curiam*)). A party seeking a mandatory injunction "must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" <u>Id.</u> (quoting <u>N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.</u>, 684 F.3d 286, 294 (2d Cir. 2012)).

"A heightened 'substantial likelihood' standard may also be required when the requested injunction (1) would provide the plaintiff with 'all the relief that is sought' and (2) could not be undone by a judgment favorable to defendants on the merits at trial." See <u>Mastrovincenzo v. City of New York</u>, 435 F.3d 78, 90 (2d Cir. 2006) (quoting <u>Tom Doherty Assocs., Inc. v. Saban Ent., Inc.</u>, 60 F.3d 27, 33–34 (2d Cir. 1995)).

## II.    THERE IS NO LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff cannot establish a likelihood of success on the merits of any of their claims.

In support of its application for relief, Plaintiff claims it is likely to succeed on the merits of its three claims for breach of contract against Defendant Oswaldo "Junior" Barajas ("Barajas") concerning the non-competition, non-solicitation and non-disclosure/confidentiality provisions in an excerpted agreement with no evidence that Barajas executed the agreement.[1]

---

[1] The Contribution and Securities Purchase Agreement does no.  See ECF Docket Entry 2-4.

Plaintiff also asserts a claim for misappropriation of trade secrets under New York common law. See ECF Docket Entry 2-1 (hereinafter "Complaint").[2]

Plaintiff is mistaken because (a) the non-competition clause is unenforceable as a matter of law; (b) Barajas did not violate the non-solicitation clause; (c) Barajas did not violate the non-disclosure clause; and (d) Defendants did not misappropriate any trade secrets.

## A. __The Non-Competition Clause is Unenforceable as a Matter of Law__

"In New York, non-compete covenants will be enforced only if reasonably limited in scope and duration, and only 'to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique.'" See EarthWeb, Inc. v Schlack, 71 F. Supp. 2d 299, 312 (SDNY 1999) (citations omitted).

The issue of whether a restrictive covenant not to compete is enforceable by way of an injunction depends in the first place upon whether the covenant is reasonable in time and geographic area. See Ticor Tit. Ins. Co. v. Cohen, 173 F3d 63, 69 (2d Cir 1999). Where a covenant not to compete is reasonable in time and geographic scope, enforcement may be granted to the extent necessary to achieve the foregoing goals. See Intertek Testing Servs, N.A., Inc. v. Pennisi, 443 F. Supp. 3d 303, 336 (E.D.N.Y. 2020).[3]

---

[2] Plaintiff does not address that it will be successful on the merits of its civil conspiracy claim, a tacit admission that it knows this claim will fail. Indeed, the Court of Appeals held, "a mere conspiracy to commit a [tort] is never of itself a cause of action" See Brackett v. Griswold, 112 N.Y. 454, 467 (1889); accord Green v. Davies, 182 N.Y. 499 (1905); see also Mamoon v Dot Net Inc., 135 AD3d 656, 658 (1st Dept. 2016) (same).

[3] As discussed in Point D, *infra*, Plaintiff does not possess a trade secret at issue herein. Further, Plaintiff does not allege, let alone provide evidence clearly showing, the release of any confidential information concerning Plaintiff's trade secrets.

The non-compete at issue in this case is five (5) years long and applies worldwide. See ECF 2-4, pp. 7-8. Courts typically uphold only a single year-long restriction, albeit hesitantly. See, e.g., Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc., 323 F. Supp. 2d 525, 534 (S.D.N.Y. 2004) (finding one-year restrictive covenant "not unreasonably long under the circumstances").

Other courts refuse to enforce restrictive covenants in their entirety when, as here, agreements overreach.  See EarthWeb, Inc., 71 F. Supp. 2d at 312 (declining not only to uphold a year-long restrictive covenant, but also declining to rewrite it to make it enforceable under a blue pencil provision, especially where the employees' services were, as here, neither special nor unique and the employment agreement overreached).

As in EarthWeb, Inc., Barajas is not alleged to have performed special or unique services,[4] nor did Plaintiff clearly show that he has.

Thus, although "[c]ourts have the power to 'blue pencil'—shorten or amend—restrictive covenants to make them enforceable," this Court should not enforce the restrictive covenant here.

In the event this Court is inclined to blue pencil the restrictive covenants (which it should not), the restrictive covenants should be limited to one year from the date of execution and within a limited geographic scope of a 100 mile radius of Plaintiff's principal offices.[5] See, e.g., Frantic, LLC v. Konfino, No. 13-CV-4516-AT, 2013 WL 5870211, *2 (S.D.N.Y. Oct. 30, 2013); see also Estee Lauder Co., Inc. v. Batra, 430 F. Supp. 2d 158, 181-82 (S.D.N.Y. 2006) (shortening the term of a non-compete from twelve to five months in order to render the clause reasonable under New York law).

---

[4] This distinction is typically reserved for "various categories of employment where the services are dependent on an employee's special talents; such categories include musicians, professional athletes, actors and the like." See Ticor, 173 F.3d at 70; accord Bradford v. New York Times Company, 501 F.2d 51 (2d Cir.1974) (second-highest ranking executive of the newspaper).
[5] See https://legacyrestorationllc.com/ (citing Colorado, Illinois, Iowa, Minnesota, Missouri, and Nebraska as areas served) (last visited July 1, 2025).

## B. <u>Barajas Did not Violate the Non-Soliciation Clause</u>

Plaintiff argues that Barajas solicited Defendant Leah Raffles ("Raffles").  However, despite forensically imaging Raffles' device and inappropriately taking Raffles' personal messages with her mother – none of which are authenticated – Plaintiff comes to court empty handed to show any direct communications between Barajas and Raffles where he solicits her.  <u>See</u> ECF Docket Entry <u>2-13</u>.  The evidence clearly shows that Raffles solicited Barajas – not the other way around.[6]  <u>See</u> Barajas Decl., ¶¶ 16-17; Raffles Decl. ¶¶ 10, 29-30. Raffles considered leaving her employ with Plaintiff because she was overworked, burnt out, and had legitimate concerns about the legality of Southern's insurance practices which were ignored despite repeated reports of same. <u>See</u> Raffles Decl. ¶¶ 10-15.

Fatal to Plaintiff's cause, however, is that it knew Raffles assisted others with outside business ventures, including Barajas, in June 2024 and only terminated Raffles on June 25, 2025 a year later for unrelated reasons.  <u>*See*</u> Raffles Decl., ¶¶ 19, 31.

To the extent Plaintiff claims this act violated the non-solicitation clause, Plaintiff waived this right. <u>See</u> <u>Robinson v. De Niro</u>, 739 F Supp 3d 33, 142 (SDNY 2023) ("Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable. Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage") (citations omitted). Therefore, despite Plaintiff's actual knowledge of Raffles working with Barajas as far back as June 2024, Plaintiff's failure to act until a year later dooms the relief it seeks now, especially in light of its admission that there was no evidence to terminate Raffles prior to April 18, 2025. See <u>Complaint ¶ 20</u>.

Therefore, Plaintiff waived its right to seek redress for any alleged breach of the non-

---

[6] It is uncontested that Raffles has no obligations under any of the restrictive covenants, including the non-solicitation clause.

solicitation clause. Plaintiff is thus not likely to succeed on the merits of its non-solicitation breach claim.

### C.  <u>Barajas Did Not Violate the Non-Disclosure and Confidentiality Clauses</u>

Plaintiff alleges that "Upon information and belief, Raffles drafted and provided these documents for the new company using Southern's trade secret and confidential information" and Barajas "[o]n information and belief, directed and assisted Raffles in the downloading and misappropriation of this Confidential Information." *See* <u>Complaint, ¶¶ 18, 50</u>. Plaintiff's motion presents absolutely no evidence to support this wild theory.

As an initial matter, such speculative pleading does not support a reasonable inference of these alleged facts. <u>See</u> <u>La Russo v. St. George's University School of Medicine</u>, 936 F. Supp. 2d 288, 305 (S.D.N.Y. 2013) ("[T]he mere possibility that a set of facts might be true does not support a reasonable inference of those facts. In other words, a complaint based on speculation alone does not state a claim") (citations omitted); <u>see also</u> <u>GMH Capital Partners v Fitts</u>, 24-CV-00290 (ER), 2025 WL 950674, at *10 (SDNY Mar. 28, 2025) ("These are precisely the kind of speculative 'naked assertion[s]' that are insufficient to survive a motion to dismiss.") (citations omitted).

Plaintiff's allegation that Raffles downloaded Southern's files after Barajas' termination to rebrand Southern's documents (<u>Complaint ¶¶ 28, 29</u>) is blatantly false. First, Raffles worked remotely and often worked late nights – performing her job duties necessitated downloading files for access. *See* Raffles Decl., ¶¶ 17-20. Indeed, the late 2024 and early 2025 downloads at issue (<u>Complaint, ¶ 28</u>) concerned a 3-week January 2025 restructuring deadline and Raffles was on the phone with Plaintiff's HR Director while accessing the files. *Id.*

Second, the purported "Confidential Information" had nothing to do with Plaintiff. *See* Raffles Decl., ¶ 21-28.

Rather, the training materials mentioned therein refer to *Raffles' mother's* training materials as Raffles' mother is a part-time independent contractor for another roofing company. *See* Raffles Decl., ¶¶ 21-22; ECF 2-13 (in message from Raffles to her mother, "I was gonna ask you because we can just rebrand *your* training content and sell it to them when they quit and start their own roofing thing") (emphasis added).

Moreover, Plaintiff presented zero evidence of Barajas' alleged wrongdoing; as set forth in Raffles' declaration, she was performing her duties in the regular course and did not misappropriate any of Plaintiff's training content.

As such, Plaintiff is not likely to succeed on the merits of its claim for breach of the non-disclosure and confidentiality clause.

### D.  Defendants Did Not Misappropriate Any Trade Secrets

The elements of a misappropriation of trade secrets claim under New York common law require a plaintiff to show "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." See N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999).

Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue . . . does not give rise to a plausible allegation of a trade secret's existence." (internal quotation marks and citation omitted) (emphasis in original). See Elsevier Inc. v Doctor Evidence, LLC, 17-CV-5540 (KBF), 2018 WL 557906, at *6 (SDNY Jan. 23, 2018).  Indeed, simply because a document is confidential, it does not follow that it is a "trade secret."  See Core SWX, LLC v. Vitec Grp. US Holdings, Inc., No. 21-CV-1697 (JMA) (JMW), 2022 U.S. Dist. LEXIS 125198, at *14 (E.D.N.Y. July 14, 2022) ("Trade secrets are not one and the same as confidential information."); see also Sapir v. Rosen, No. 20-cv-06191

(RA), 2021 U.S. Dist. LEXIS 189350, at *16 (S.D.N.Y. Sept. 30, 2021) (noting that plaintiff conflated the concept of a trade secret with confidential information and their failure to be specific denies the court of meaningfully assessing the protectability of the documents in the complaint).

Here, Plaintiff failed to even remotely identify the existence of any trade secrets. That is because it has none. *See* Raffles Decl., ¶¶ 21-28. Indeed, any documents it purports to be trade secrets were created by Raffles using ChatGPT, an artificial intelligence tool that the world at large is rampantly using, which courts abhor. Id.; see, e.g., D.S. v. New York City Dept. of Educ., No. 22-CV-10641 (GHW) (RFT), 2024 WL 2159785, at *6 (S.D.N.Y. Apr. 29, 2024), report and recommendation adopted, 2024 WL 2158583 (S.D.N.Y. May 14, 2024).   This is a "hornbook example of a non-reasonable effort to protect [a] secret."[7] David S. Levine, *Generative Artificial Intelligence and Trade Secrecy*, 3 J Free Speech L 559, 575 (2023). Further still, Southern's own handbook defines "Trade Secrets" as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons or entities who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. The Company's Trade Secrets are: (1) not generally known to the public or to the Company's competitors; (2) were developed or compiled at significant expense by the Company over an extended period of time; and (3) are the subject of the Company's reasonable efforts to maintain their secrecy.

*See* ECF 2-6, pp. 40-41.

---

[7] "Initially, it is important to understand that--in relation to all companies except OpenAI and its partners--ChatGPT is, to use Larry Ellison's famous quote about cloud computing, "someone else's computer." Although trade secret law has historically been generous to trade secret holders who confront sneaky, sophisticated, or blatant forms of misappropriation or corporate espionage, sharing your trade secret with a third party (like OpenAI) without a non-disclosure agreement in place (at least) would likely be a hornbook example of a non-reasonable effort to protect your secret. Because trade secret holders will increasingly be expected to understand the risks associated with sharing trade secrets with a third-party like OpenAI, the trade secret will increasingly be viewed as having been given away." David S. Levine, *Generative Artificial Intelligence and Trade Secrecy*, 3 J Free Speech L 559, 575 (2023) (citations and footnotes omitted).

As such, none of the documents referenced by Plaintiff constitute trade secrets because they were created by Raffles[8] through ChatGPT and Southern made no reasonable efforts to maintain their secrecy. Indeed, the McComas Aff. is devoid of anything but conclusory statements to that effect. *See* ECF 2-3.

Plaintiff therefore fails to establish a likelihood of success on the merits on any of its claims, both as a matter of law and on the facts.

## III. PLAINTIFF FAILS TO ESTABLISH IRREPARABLE HARM

A demonstration of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." See Bell & Howell v. Masel Supply Co.*,* 719 F.2d 42, 45 (2d Cir.1983). The mere possibility of harm is not sufficient; the harm must be imminent and the movant must show it is likely to suffer irreparable harm if equitable relief is denied. See JSG Trading Corp. v. Tray–Wrap, Inc.*,* 917 F.2d 75, 79 (2d Cir.1990).

If irreparable harm is remote, speculative, or a mere possibility, the motion must be denied. See Borey v. National Union Fire Ins. Co.*,* 934 F.2d 30, 34 (2d Cir.1991); see also Reuters Ltd. v. United Press Intern., Inc.*,* 903 F.2d 904, 907 (2d Cir. 1990).

While a businesses' "loss of reputation and goodwill constitutes irreparable harm," Really Good Stuff, LLC v. BAP Investors, LLC, 813 Fed. Appx. 39, 44 (2d Cir. 2020) (citing Register.com, Inv. v. Verio, Inc., 356 F.3d 393, 404 (2d Cir. 2004)), the "loss of trade secrets and client relationships does not establish irreparable harm absent a showing that there is an *imminent risk of dissemination of trade secrets* and that plaintiff's injuries are not compensable through an

---

[8] It is important to note that Raffles never received a copy of Southern's handbook nor was she aware of its existence until this litigation, and it was not referenced in her New Assignment Letter, which also contains a merger clause. See Raffles Decl., ¶ 6 and Exhibit 1. The McComas Affirmation concedes this point by coyly stating that the handbook "applies to all Southern employees" but makes no allegation that it was provided to any Southern employee, let alone Raffles or Barajas. See ECF 2-3, ¶ 6.

award of damages." <u>See</u> <u>Faively Transport Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 119 (2d Cir. 2009) ([W]here there is no danger that a misappropriator will disseminate proprietary information, 'the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product . . . [which] should be fully compensable by money damages'") (<u>quoting</u> <u>Geritrex Corp. v. Dermarite Indus., LLC</u>, 910 F. Supp. 955, 966 (S.D.N.Y. 1996))).

Here, Plaintiff claims irreparable harm exists due to Defendants' alleged conspiracy to operate a competing business, which it asserts amounts to a violation of (a) a five-year worldwide restrictive covenant in an unsigned excerpt to which no Defendant appears as a signatory (*See* Unsigned Excerpt at <u>ECF 2-4</u>); and (b) misappropriation of trade secrets under New York common law. Plaintiff's argument fails for a plethora of reasons.

### E.  <u>Plaintiff's Application is Based Entirely on Inadmissible Hearsay that is Far From Inherently Trustworthy</u>

Although a court may consider hearsay evidence at the preliminary injunction stage, that evidence must be "inherently trustworthy." <u>See</u> <u>Mullins v City of New York</u>, 626 F3d 47, 52 (2d Cir 2010) (<u>quoting</u> <u>SEC v. Musella</u>, 578 F. Supp. 425, 427–28 (S.D.N.Y.1984) (noting that a court may consider hearsay evidence if such evidence is found to be "inherently trustworthy").

Plaintiffs evidence – a statement from an unidentified witness who overheard a conversation *at a bar* – is inherently *untrustworthy*.

Plaintiff's application is supported by nothing more than inadmissible hearsay. This includes the entirety of the McComas Affirmation. *See* <u>ECF 2-3</u>. For example, ¶ 7 is based on McComas' description of a conversation with an unidentified employee, whose knowledge is based, in part, on a conversation this unidentified employee allegedly overheard at a bar between Barajas and another individual. Critically, McComas does not state that he overheard this conversation.

Rather, McComas' knowledge, as is the pattern throughout his affirmation, is entirely secondhand. While McComas states that the unidentified employee "reported to Southern that Barajas was soliciting (and engaging in a conspiracy with) then-current employees David Knight, Alex Skelton, and Leah Raffles to start a company that competed with Southern," McComas does not identify to whom at Southern the report was made. Moreover, to the extent McComas claims that he personally interviewed Barajas and Barajas did not deny starting a competing company, that is unequivocally false. *See* Barajas Decl., ¶¶ 18-20. Indeed, Mr. McComas' credibility, if any, is shaky at best and not inherently trustworthy.

As such, the McComas Affirmation must be disregarded in its entirety, as it presents no evidence – let alone clear evidence, as is required on a motion for a preliminary injunction – in support of Plaintiff's requests.

**F.  Plaintiff failed to Establish That Barajas is a Direct Competitor**

Even if the McComas Affirmation is considered, Plaintiff still fails to establish irreparable harm. Relevant here, to establish irreparable harm, Plaintiff must show that Barajas is a direct competitor of Plaintiff, which it cannot show. See Cenveo Corp. v Diversapack LLC, 09 CIV. 7544 (SAS), 2009 WL 3169484, at *6 (SDNY Oct. 1, 2009) ("Here, [plaintiff] concedes that [defendant] is not a direct competitor and has not alleged misappropriation of trade secrets, clients, or confidential information. Without such claims, [plaintiff] has not made a clear showing of irreparable harm"); see also Rensselaer Polytechnic Inst. v. Appl Inc., 1:13-CV-0633 DEP, 2014 WL 201965, at *6 (N.D.N.Y. Jan 15, 2014) ("the parties are not direct competitors, as neither RPI nor Dynamic practices the '798 Patent, there is little risk that the plaintiff will suffer irreparable harm through the continued use of accused technology that cannot be compensated through monetary relief").

Here, Plaintiff alleges Barajas seeks to operate a competing business.

However, Plaintiff presents no evidence as to how this business competes with Plaintiff's business, nor has it shown that any leads or customers have been solicited. That is because Plaintiff cannot. Barajas operates a car dealership, a short-term property rental business, and a real estate development business. *See* Barajas Decl., ¶¶ 10-15. Despite Plaintiff's claim during oral argument that "business" is broadly defined in the unsigned excerpt, neither HVAC, plumbing, nor water irrigation work are contemplated by the definition of "business" therein. (*See* ECF 2-4). Moreover, Barajas is not involved the new HVAC, plumbing, and water irrigation business; Barajas intends to employ it to grow his short-term rental property and real estate development businesses. *See* Barajas Decl., ¶¶ 13, 25.

Moreover, Plaintiff's bread and butter involves working with homeowners' insurance carriers; neither Wolff nor Raffles work with such insurers. *See* Raffles Decl. ¶¶ 12-15; Wolff Decl. ¶ 8-9. This is in no small part due to the improprieties Raffles noticed at Southern, Southern's refusal to rectify or address her concerns, and her refusal to get involved with any fraudulent and improper conduct. *See* Raffles Decl. ¶¶ 12-15.

In any event, Barajas, in furthering his short-term rental and real estate development businesses, needed an affordable renovation company, specifically one to handle HVAC, plumbing, and water irrigation. *See* Barajas Decl. ¶¶ 14-15, 25. Indeed, Barajas has no interest in Wolff's company other than it serving his needs with his real estate development business. *Id.* at ¶ 25. Further, Wolff has not decided to grant Barajas equity in the new company. *See* Wolff Decl., ¶ 11. Finally, Raffles is not employed by either Barajas or Wolff; she works in marketing – an entirely different field. *See* Raffles Decl., ¶ 32. The lengths Plaintiff is willing to go to prevent Raffles from gainful employment is, frankly, preposterous.

As such, Plaintiff failed to establish that Barajas or the new company are direct competitors, warranting denial of a preliminary injunction.

**G. <u>Any Alleged Harm is Speculative</u>**

"[I]f a party fails to show irreparable harm, a court need not even address the remaining elements" of the preliminary injunction standard. <u>See</u> <u>Coscarelli v. ESquared Hosp. LLC</u>, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019). "[C]onclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." <u>See</u> <u>Uni-World Capital L.P. v. Preferred Fragrance, Inc.</u>, 73 F.Supp.3d 209, 236 (S.D.N.Y. 2014); <u>see also</u> <u>Shepard Indus. v. 135 E. 57th St., LLC</u>, 1999 WL 728641, at *8 (S.D.N.Y. Sept. 15, 1999) (vacating preliminary injunction because plaintiff only asserted conclusory allegations of irreparable harm).

In <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, the Second Circuit found that the plaintiff had failed to provide any evidentiary support of irreparable harm, because the plaintiff was unable to show that despite using plaintiff's proprietary information for twelve years to manufacture products, the plaintiff was unable to provide any evidentiary support that the defendant was disseminating plaintiff's trade secrets. <u>See</u> 559 F.3d 110 (2d Cir. 2009).

Accordingly, the Second Circuit reversed the preliminary injunction due to the absence of any evidentiary support that the proprietary information was to be disseminated. <u>Id.</u> Similarly, in <u>Shepard Indus.</u>, the temporary injunctive relief ordered by the Court and even agreed to and extended by the parties was vacated because the plaintiff's "pleadings, affidavits, and exhibits consist[ed] only of conclusory allegations of harm to its goodwill or reputation in the absence of a preliminary injunction." <u>See</u> 1999 WL 728641, at *8. The Court further found that the plaintiff failed to allege it faced imminent financial ruin and that its damages would be easily calculable at trial, finding plaintiff failed to show a sufficient threat of irreparable harm. <u>Id.</u>

Plaintiff's application here is woefully deficient in its showing of irreparable harm. Indeed, it only has conclusory allegations of loss of goodwill. This is insufficient as a matter of law to demonstrate the single most important prerequisite for the relief it seeks. Therefore, the injunction must be denied because Plaintiff failed to establish irreparable harm.

## IV.    A BALANCING OF THE EQUITIES TIPS IN DEFENDANTS' FAVOR

Before issuing a preliminary injunction, "a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." See Salinger, 607 F.3d at 80 (citing Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008)). "'Balancing the equities may weigh against enforcement 'where the interests the employer seeks to protect are ephemeral in contrast to the grave harm to the employee resulting from enforcement.'" See Capstone Logistics Holdings, Inc. v. Navarrete, No. 17-CV-4819, 2018 WL 6786338, *27 (S.D.N.Y. Oct. 25, 2018) (quoting Sensus USA, Inc. v. Franklin, No. 15-742, 2016 WL 1466488, *8 (D. Del. Apr. 14, 2016) (other citation omitted)).

In this case, Plaintiff's path to preliminary injunctive relief is cluttered with a clumsy collection of facts and a gaping hole where clear and convincing evidence is supposed to be placed.

In such circumstances, where Plaintiff has failed to demonstrate any damages related to the alleged wrongful conduct, the balancing of the equities tip decidedly in favor of the Defendants. See Centimark Corp. v. Tect Am. Corp., No. 08-CV-7323, 2010 WL 11606646, *8 (N.D. Ill. Apr. 6, 2010) (finding harm to business if contracts were not enforced is "drastically outweighed" by the harm to the defendant because he would be left without a job and unable to support his family).

Accordingly, Plaintiff fails to establish entitlement to the injunctive relief it seeks on this ground, as well.

## <u>CONCLUSION</u>

Just as David defeated Goliath with a sling and a rock (1 Samuel 17:50), the reasons set forth herein constitute Defendants' sling and rock to permit the Court sufficient reasons to deny Plaintiff's motion for a preliminary injunction.

Dated:  Jamaica, New York
       July 3, 2025                                      Respectfully submitted,

                                                **SAGE LEGAL LLC**
                                                *Emanuel Kataev, Esq.*
                                                Emanuel Kataev, Esq.
    18211 Jamaica Avenue
    Jamaica, NY 11423-2327
    (718) 412-2421 (office)
    (917) 807-7819 (cellular)
    (718) 489-4155 (facsimile)
    emanuel@sagelegal.nyc

Dated:  Forest Hills, New York
       July 3, 2025                                        **KUSHMAKOV LAW, P.C.**
                                                *Eduard Kushmakov, Esq.*
    Eduard Kushmakov, Esq.
    7150 Austin Street, Suite 205
    Forest Hills, NY 11375
    (646) 694-0248 (office)
    eduard@kushmakovlaw.com