UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEGACY RESTORATION, LLC,

                Plaintiff,

   -against-

OSWALDO "JUNIOR" BARAJAS, JOHN DOE ENTITY 1, LEAH RAFFLES, and BRIAN WOLFF,

                Defendants.
-------------------------------------------------------------------X

Case No.: 1:25-cv-5319 (LJL) (OTW)

**DECLARATION OF DEFENDANT OSWALDO "JUNIOR" BARAJAS IN OPPOSITION TO PLAINTIFF'S MOTION <u>FOR INJUNCTIVE RELIEF</u>**

Oswaldo "Junior" Barajas declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am a Defendant in the above-referenced case.

2. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge.

3. The Plaintiff purchased my roofing and gutter contracting company from me on January 1, 2024, and I remained an employee of the Plaintiff following the sale.

4. I was a shareholder of Southern Roofing ("Southern"), which the Plaintiff purchased, and continued to maintain shares in Southern following the purchase.

5. I also continued to maintain managerial authority over Southern's employees.

6. In or about August 2024, Plaintiff decided to implement a compensation plan which was not in the best interest of Southern's employees.

7. Due to my opposition of the implementation of this plan, Plaintiff made the decision to look for any reason to terminate my employment from Southern.

8. As part of this effort to push me out, Plaintiff "named me" Regional Sales Director and assigned me a territory outside the State of Tennessee – Missouri.

9. This required me to frequently travel out of state and be onsite at the various locations.

10. Plaintiff did so despite the fact I was poised for greater success in Tennessee and did so to burden me with travel.

11. Plaintiff's scheme to push me out, and then file this frivolous lawsuit is a slap in the face to say the least, as Plaintiff knows that I am a single father with full custody of my two (2) young children; notwithstanding, I gave the job 100% and dedicated myself tirelessly for the benefit of Plaintiff for our mutual success.

12. Separate and apart from my employment and status as a shareholder of Southern, I have been and remain involved in numerous other businesses.

13. This is common amongst shareholders of Southern and Legacy – they each tend to run or have interests in other, separate businesses.

14. For example, I am a fifty percent (50%) shareholder in a dealership called USA Fleet Sales; Defendant Brian Wolff ("Wolff") is the other fifty percent (50%) shareholder.

15. As another example, I own and operate five (5) rental properties as short-term rentals through AirBnb and other channels as well as a real estate development business.

16. As part of my plan to grow my short-term rental property business, I am working on purchasing additional properties, remodeling them, and renting or selling them out to grow my portfolio of properties.

17. This also includes new construction development since at least February 2024 and it was intimately known by Southern's – and Legacy's – upper management.

18. A huge key to success in this business is controlling renovation costs.

19. As a result, I decided to put together a team of individuals who could serve my needs at these properties, primarily with HVAC,[1] plumbing, water irrigation, and related trades.

20. In a stroke of luck, I was fortunate to hear from Defendant Leah Raffles ("Raffles") that she was interested in making a move away from Plaintiff due to her getting burned out at Southern and disagreeing about the way Plaintiff handled business.

21. Thus, I never solicited Raffles; she came to me.

22. In Plaintiff's papers, there are allegations and a sworn statement from Michael McComas ("McComas") about an "interview" conducted with me in April 2025 about allegations that I started a competing company, and that I "did not deny" doing so.

23. This is categorically false; I unequivocally denied starting any competing company during that conversation.

24. This conversation, and iterations of it, were with John Falls and James Thomas Shaheen ("JT"), principals of Plaintiff.

25. They were intimately aware of my other businesses and I affirmed that none of my other businesses competed with either Southern or Legacy.

26. Moreover, McComas did not conduct the interview and I never spoke with him on this topic.

27. It is a mystery to me why McComas is submitting any testimony in this case as he was far removed from and not involved in any of the conversations he mentions, knew about Southern's and Legacy's respective shareholders and others (such as myself and Raffles) engaging in separate and unrelated businesses, and likely himself participated in those businesses.

---

[1] Heating, ventilation, and air conditioning.

3

28. I am advised, as a result, that McComas' statements – of which he has no firsthand knowledge – concerning what was discussed at an "interview" of me is non-admissible hearsay, and even if admissible, those statements are not inherently trustworthy.

29. Throughout my tenure at Southern, I had numerous conversations with JT, the President of Southern,[2] concerning the operations of Southern and the goings-on with its employees.

30. During my discussions with JT, I openly informed him that Raffles was assisting me with standard operating procedures for USA Fleet Sales and he similarly confided in me that Raffles assisted him with aspects of multiple companies he was involved in.

31. Further still, Raffles never made company documents for me other than for USA Fleet Sales, which has nothing to do with Southern's or Legacy's business, let alone roofing or construction, generally.

32. As such, any reference to "training materials" or any other Southern and/or Legacy documents (which I categorically deny using, receiving, or relying upon for anything not in furtherance of my duties toward Southern or Legacy) is severely misplaced and factually incorrect as they are wholly irrelevant to any businesses I operate.

33. In other words, I never sought to hide anything from anyone and was not doing anything to actively compete with Plaintiff.

34. I have no interest whatsoever in the company my partner Wolff was forming other than it serving my needs in my real estate development business since February 2024; Raffles only discussed this with me in the context of my status as a veteran as seen in the text messages.

---

[2] Up until about three (3) weeks ago, JT was President. He has since moved away from day-to-day operations, became "Chief Innovations Officer." John Falls took over his role as Vice President of Operations, and effectively took over JT's previous role as President.

35. Adding insult to injury, roofing for new construction is not what Southern and Legacy do.

36. Indeed, using them for roofing (which I am not obligated to do) on my new developments was never an option because they only handle insurance and out-of-pocket replacement roofs; they do not handle new construction.

37. Again, Southern's and Legacy's upper management was intimately aware of all of these facts, nuances, and the existence of my other businesses.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 3, 2025.


Oswaldo Barajas (Jul 3, 2025 11:05 CDT)

Oswaldo "Junior" Barajas