UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
LEGACY RESTORATION, LLC,

                Plaintiff,

  -against-

OSWALDO "JUNIOR" BARAJAS, JOHN DOE ENTITY 1, LEAH RAFFLES, and BRIAN WOLFF,

                Defendants.
-----------------------------------------------------------------------X

Case No.: 1:25-cv-5319 (LJL) (OTW)

**DECLARATION OF DEFENDANT LEAH RAFFLES IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Leah Raffles declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am a Defendant in the above-referenced case.

2. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge.

3. I first performed work for Southern Roofing ("Southern") in May 2023, well before Plaintiff became involved by purchasing Southern.

4. I became a full-time employee of Southern a few months later as General Manager of the Murfreesboro branch.

5. After the purchase of Southern in January 2024 by Plaintiff, I remained the General Manager and was then promoted to Director of Administration in March 2024.

6. Throughout my entire employment with Southern, before the sale and after, I was never subject to any restrictive covenant agreement.

7. Similarly, throughout my entire employment with Southern, before the sale and after, I was never aware of nor provided a copy of the handbook Plaintiff references throughout its papers; the first time I became aware of its existence was during this litigation.

8. My New Assignment Letter, dated April 1, 2024, makes no mention of the handbook, either. See a true and correct copy of the New Assignment Letter at **Exhibit "A."**

9. Throughout my entire employment with Southern, including after the sale, I performed work for others "on the side" to make extra money, and upper management at Southern knew about it.

10. For example, in or about October 2024, James Thomas Shaheen (hereinafter "JT") asked me to assist in redesigning the software Corelink Pro, a company owned by him, which serves the needs of Southern and other companies unrelated to Southern.

11. Similarly, in November 2024, JT asked me to use my vacation days to write standard operating procedures for a towing company he was purchasing.

12. Further, and as will be discussed further below, I reached out to Defendant Oswaldo "Junior" Barajas ("Barajas") for work because I was contemplating leaving Southern.

13. Since then, Barajas has provided me with multiple side jobs to make extra money, none of which had to do with roofing.

14. At some point, Barajas told me his partner, Defendant Brian Wolff ("Wolff"), might be able to use my help with a general contractor company he was creating, which Barajas intended to use for his short-term rental properties.

15. Since June 2024, I have come across numerous improprieties at Southern concerning – among other things – kickbacks of insurance deductible payments to Southern's customers, all of which I reported to senior management at Southern, missing monies, safety issues, and efforts by Southern employees forming competing companies and soliciting employees away from Southern.

16. Additionally, I have identified and reported numerous serious improprieties at Southern to senior management, including but not limited to:

(a) failure to collect required insurance deductibles from customers, which I reasonably believe constitutes insurance fraud;

(b) unaccounted-for company funds;

(c) safety violations; and

(d) attempts by Southern employees to establish competing businesses while actively soliciting Southern staff.

17. I also uncovered schemes in which Southern employees diverted customers under signed contracts to complete roofing work independently or through competing companies.

18. It is therefore baffling to me that Plaintiff is accusing *me* of engaging in the very conduct I have repeatedly reported to them.

19. I believe that I was terminated in retaliation for bringing to their attention these varied wrongdoings, because some of the individuals I reported *remain employed at Southern*.

20. I never felt that my reporting was taken seriously and that Southern refused to rectify and address my concerns because it would be months after my reporting that people were terminated, if at all.

21. Given all of these improprieties, it should be no mystery that I sought to leave Southern and stay far away from any sort of insurance work or get involved with any fraudulent and improper conduct.

22. Setting that aside, the evidence Plaintiff relies on to argue I have engaged in wrongdoing does not support their contentions.

23. I categorically deny taking training content, standard operating procedures, and sales training documents and providing them to anyone.

24. The evidence log Plaintiff relies on, ECF Docket Entry 2-10, covers the dates December 10, 2024 through May 21, 2025.

25. I was only terminated on June 25, 2025, and it was well within my right – and, indeed, my duty – to access Plaintiff's documents in order to perform my work for them.

26. I primarily worked remotely; the only way to access documents in the course of my duties was to download them.

27. That I accessed the documents late at night raises no red flag; I was a salaried employee at Southern and was dedicated to getting my work done such that I was frequently working late nights.

28. The downloading mentioned throughout Plaintiff's frivolous lawsuit was in furtherance of a ridiculous, tight three (3) week deadline for the company's January 2025 restructuring.

29. Moreover, I was frequently on the phone with Southern's HR Director while I was accessing those documents.

30. Setting that aside, Plaintiff points to evidence of text messages inappropriately obtained between myself and my mother to support the notion that its trade secrets were misappropriated.

31. Plaintiff is sorely mistaken; if one reads the text message, I refer to *my mother's* training content, as she is an independent contractor that works for a roofing company. See ECF Docket Entry 2-13 (in a text message *from me* to my mother: "I was gonna ask you because we can just rebrand *your* training content …") (emphasis added).

4

32. In other words, I knew it would be inappropriate to take Plaintiff's materials and did not do so; their own evidence fails to support their contention that I misappropriated anything!

33. That said, I question Plaintiff's characterization of these documents as "trade secrets."

34. This is because I personally created these documents myself, and did so using artificial intelligence tools such as ChatGPT.

35. If I am capable of preparing these documents using such tools, anyone can.

36. Moreover, I understand that ChatGPT sources its information *from data it already has*.

37. Based on the foregoing, I am advised that those documents do not constitute trade secrets.

38. To my knowledge, Plaintiff did not make any substantial investment in having these documents prepared.

39. To my knowledge, Plaintiff did not make any real effort to shield these documents or protect them; they were freely exchanged via email and remained on a "SharePoint" drive where, as far as I understand it, any employee can access them.

40. With all the aforementioned improprieties in Plaintiff's operations, and the crazy hours I was working, I was beginning to get burned out and considered finding a job elsewhere.

41. As a result, I reached out to Barajas to discuss an opportunity to work with him as I knew through working with him that he was involved in other business ventures.

42. I first began working with Barajas in June 2024 in relation to a home he was building that I provided interior design for, and all senior management at Southern was aware of me doing so.

43. In order to scale his short-term rental property business, Barajas was looking to build a team to perform HVAC, plumbing, water irrigation, and related work.

44. However, it is critical to note that I do not work for either Barajas or Wolff.

45. I am employed in an entirely different field – marketing – which has nothing to do with Plaintiff's business.

46. As such, Plaintiff's claims against me have no merit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 3, 2025.

*leah raffles (Jul 3, 2025 11:15 CDT)*

Leah Raffles