UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- X
                                                                                     :

LEGACY RESTORATION, LLC,           :

                   *Plaintiff*,            :

                                        :  Case No. 1:25-CV-05319
   v.                                  :

OSWALDO "JUNIOR" BARAJAS,       :
USA CONTRACTING CO, LLC,        :
LEAH RAFFLES, AND BRIAN         :
WOLFF,                                   :

                 *Defendants*.          :

---------------------------------- X

**<u>REPLY BRIEF IN SUPPORT OF LEGACY'S</u>**
**<u>REQUEST FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT AND UNDISPUTED FACTS ....................................................... 1
LEGAL STANDARD ..................................................................................................................... 6
ARGUMENT .................................................................................................................................. 6
    I.    Legacy Is Likely to Succeed on the Merits. ................................................................. 6
        A.    Legacy Is Likely to Prevail on Its Breach of Contract Claims. ..................... 6
        B.    Legacy Is Likely to Prevail on Its Misappropriation of Trade Secrets Claims. ........... 9
        C.    Regardless of Defendants' Equivocations, the Equities Weigh in Legacy's Favor ... 11
    II.    Legacy Will Suffer Irreparable Harm Absent a Preliminary Injunction. ......................... 12
        A.    Barajas' Continued Violation of the Purchase Agreement Covenants Constitutes an Unquantifiable Injury. ........................................................ 12
        B.    Barajas' Admitted Affiliation with Wolff's Business Shows that the Disclosure of Legacy's Trade Secrets Is Inevitable. ........................... 13
    III.    The Public Interest Weighs in Favor of Holding Barajas to the Terms of the Contract He Signed. ........................................................................ 14
CONCLUSION .............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adecco USA, Inc. v. Staffworks, Inc.*,
  No. 6:20-CV-744, 2020 WL 7028872 (N.D.N.Y. Sept. 15, 2020) ...................................... 8

*Cenveo Corp. v. Diversapack LLC*,
  No. 09 CIV. 7544 (SAS), 2009 WL 3169484 (S.D.N.Y. 2009) .....................................12, 13

*Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*,
  337 F.R.D 47 (S.D.N.Y. 2020) ............................................................................................ 10

*Empower Energies, Inc. v. SolarBlue, LLC*,
  No. 16-CV-3220, 2016 WL 5338555 (S.D.N.Y. Sept. 23, 2016) ....................................... 14

*Evolution Mkts., Inc. v. Penny*,
  No. 7823/09, 2009 WL 1470451 (N.Y. Sup. Ct. 2009) ........................................................ 9

*Express Freight Sys. Inc. v. YMB Enters. Inc.*,
  623 F. Supp. 3d 39 (E.D.N.Y. 2022) .................................................................................... 6

*Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*,
  No. 20-CV-181, 2020 WL 915824 (S.D.N.Y. Feb. 26, 2020) ............................................ 14

*Intertek Testing Services, N.A., Inc. v. Pennisi*,
  443 F. Supp. 3d 303 (E.D.N.Y. 2020) .................................................................................. 7

*JTH Tax, Inc. v. Sawhney*,
  No. 19-cv-4035 (AJN), 2019 WL 3051760 (S.D.N.Y. July 11, 2019) ............................... 12

*JTH Tax, LLC v. Agnant*,
  62 F.4th 658 (2d Cir. 2023) ................................................................................................ 12

*Mathias v. Jacobs*,
  167 F. Supp. 2d 606 (S.D.N.Y. 2001) .................................................................................. 7

*Metro. Taxicab Bd. of Trade v. City of New York*,
  615 F.3d 152 (2d Cir. 2010) ............................................................................................... 11

*Metro. Transp. Auth. v. Duffy*,
  ___ F. Supp. 3d ___, 2025 WL 1513369 (S.D.N.Y. May 28, 2025) ..................................... 6

*Mister Softee, Inc. v. Tsirkos*,
  No. 14 Civ. 1975 LTS RLE, 2014 WL 2535114 (S.D.N.Y. June 5, 2014) .......................... 8

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010) ................................................................................................. 12

*Naden v. Numerex Corp.*,
  593 F. Supp. 2d 675 (S.D.N.Y. 2009) .................................................................................... 7

*Payment All. Int'l, Inc. v. Ferreira*,
  530 F. Supp. 2d 477 (S.D.N.Y. 2007) ................................................................... 6, 7, 8, 13

*Rensselaer Polytechnic Institute v. Apple Inc.*,
  2014 WL 201965 (N.D.N.Y. 2014) ...................................................................................... 12

*St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*,
  No. 5:24-cv-276 (BKS/ML), 2024 WL 3093542 (N.D.N.Y. May 16, 2014) ............................. 11, 12

*Steelite Int'l U.S.A., Inc. v. McManus*,
  No. 21-CV-2645 (LAK), 2021 WL 1648025 (S.D.N.Y. Apr. 27, 2021) ............................................. 7

*StoneX Grp., Inc. v. Shipman*,
  No. 23-CV-00613, 2024 WL 1509346 (S.D.N.Y. Feb. 5, 2024) ......................................................... 11

*Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*,
  73 F. Supp. 3d 209 (S.D.N.Y. 2014) .................................................................................... 12

*Unisource Worldwide, Inc. v. Valenti*,
  196 F. Supp. 2d 269 (E.D.N.Y. 2002) .................................................................................... 8

*West v. Goodyear Tire & Rubber Co.*,
  167 F.3d 776 (2d Cir. 1999) ................................................................................................ 10

**Statutes**

Tenn. Code. Ann. § 50-1-1003 ................................................................................................. 8

**Other Authorities**

Rule 37(e) ............................................................................................................................. 10

**PRELIMINARY STATEMENT AND UNDISPUTED FACTS**

The evidence[1] against Defendants is overwhelming, and this Court should enforce the Restrictive Covenants in the Purchase Agreement, pursuant to which Legacy purchased Southern for over $50 million:

- Barajas does not deny that he solicited Southern employees Alex Skelton and David Knight.

- Barajas further admits that he and Wolff co-own a business named USA Fleet Sales, and that Raffles has created materials for USA Fleet Sales. Barajas Decl. ¶¶ 14, 30. Group texts show the same:



Hadamik Decl. Ex. B; Hadamik Aff. Ex. B. This is an admitted violation of Barajas' Nonsolicitation Covenant, even though USA Fleet Sales may not be a competitor of Legacy.

- At the same time as Wolff and Barajas had Raffles working at USA Fleet Sales, texts show they hatched the plan to circumvent Barajas' noncompete by starting a

---

[1] Plaintiff Legacy Restoration, LLC ("Legacy") incorporates the evidence, facts, and defined terms set out in its Memorandum of Law in Support of Its Order to Show Cause for Injunctive Relief and Temporary Restraining Order, the exhibits thereto, the First Amended Complaint ("FAC"), and the exhibits accompanying this reply.

1

contracting company that also did roofing, and Barajas' solicited Raffles for that new company. **All of the texts below occurred within a 3-hour period**:

> **+14079632743** · 39 messages between 3/28/2025 - 3/29/2025 · Leah Raffles · Mom
>
> **Mom** — 3/28/2025, 12:53 PM
> Oh, so Jr. is asking you to take the test?
>
> **Leah Raffles** — 3/28/2025, 12:54 PM
> well, he was just venting to me about all the shit that went down last night and this morning and then I said well what would you guys do and he goes I don't know maybe this person take the test and I said what if I take the test and then I looked into it, and I would have to be an equity holder and he said that he would be OK with that if I held a small percent of equity of every business that operated under my license
>
> **Mom** — 3/28/2025, 12:55 PM
> Oh I see.
>
> **Leah Raffles** — 3/28/2025, 12:55 PM
> I can also keep working for Southern until it runs out because I'm the only one that they never sent a non-solicit agreement or a noncompete to and they haven't realized that
>
> **Leah Raffles** — 3/28/2025, 12:57 PM
> I was gonna ask you because we can just rebrand your training content and sell it to them when they quit and start their own roofing thing… They're gonna start a roofing business as Brian is the partner because the other guys don't have a noncompete. Only Junior does so we're just gonna do it as Brian be in the partner and then he'll sign over equity to Junior as soon as his noncompete runs out.

2



Hadamik Decl. Ex. C, D.

- Raffles admits that she and Barajas discussed the prospect of her working with Wolff at his contracting business. Raffles Decl. ¶ 14.

- Barajas admits that he has an interest in the success of Wolff's renovation business, and neither Barajas, Raffles, nor Wolff deny that this new company is intended to perform roofing and exterior renovation work, including for Barajas' and Wolff's rental properties. *See* Barajas Decl. ¶¶ 15–19; *see generally* Raffles Decl.; *see*

3

- *generally* Wolff Decl.; Tr. of Temporary Restraining Order Hr'g dated June 26, 2025 ("TRO Hr'g Tr.") at 12:18–13:7; 18:17–24; 20:10–17.

- Wolff admits that he started a contracting business. Wolff Decl. ¶ 5. Wolff admits that his business has completed a job in Mississippi, and does not deny that it involved roofing and exterior renovation. *See* Wolff Decl. ¶ 11. In addition, Wolff initially referred 9 properties he owned to the Company for roof replacements. *See* McComas Decl. ¶ 54. For each of these properties, a Customer Service Agreement was signed by Wolff's representative. *See* McComas Decl. ¶ 55 Ex. 65. Correspondence regarding these jobs was directed to Wolff at 711 Providence Blvd., Clarksville, TN. *See* McComas Decl. Ex. 67. The next month, in April 2025, Wolff went dark, and these jobs were never completed by the Company. *See* McComas Decl. ¶ 58. That same month, Wolff filed the Articles of Association for USA Contracting, with a principal place of business at that same 711 Providence address. McComas Decl. ¶ 50 Ex. 61.

- Wolff claims that he never discussed his new business with Raffles, but does not deny discussing it with Barajas. In fact, Wolff states that he has not yet made a decision whether to grant Barajas equity in the business. Wolff Decl. ¶ 9. His representation that Barajas does not currently possess an interest in the business is consistent with their plan as stated in Raffles' text messages to keep Barajas' name off of the company until his Noncompete Covenant expires. *See* Wolff. Decl. ¶ 8.

- Wolff and Raffles do not deny that they were aware of Barajas' Noncompete Covenant.

4

- Wolff does not deny that his company is engaged in the same business as precluded by Barajas' Noncompete: "Moreover, it is my understanding that Plaintiffs business consists solely of roofing, and gutters, while my business deals with *more* mechanical trades and general construction." Wolff Decl. ¶ 12 (emphasis added). Similarly, Barajas does not deny that he "put together a team of individuals" to help remodel his rental properties to "control[] renovation costs," and while he claims they work with "*primarily* with HVAC, plumbing, water irrigation, and related trades," he does not deny that his remodeling efforts include roofing and exterior renovation. *See* Barajas Decl. ¶¶ 15–19 (emphasis added), 34.

- Skelton and Knight have refused to respond to demand letters sent by the Company. *See* McComas Decl. ¶ 61–63 Ex. 69–72. In these letters, the Company requested the Skelton and Knight recognize their obligation to preserve relevant evidence and make simple factual representations about the facts giving rise to this suit by July 3. *See* McComas Decl. ¶ 63 Ex. 71–72. Skelton and Knight sent substantially identical emails refusing to respond before the Preliminary Injunction hearing. *See* Allen Decl. Exs. D, E.

- Despite Defendants' claims that they did not misappropriate the Company's trade secrets, Raffles spoliated evidence by deleting her browser history, and factory resetting her work computer about two hours after finding out about this lawsuit. *See* Hadamik Decl. ¶¶ 6–9; Allen Decl. ¶ 3, Ex. A.

**LEGAL STANDARD**

To obtain a preliminary injunction, "a movant must demonstrate: (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction." *Metro. Transp. Auth. v. Duffy*, ___ F. Supp. 3d ___, 2025 WL 1513369, at *17 (S.D.N.Y. May 28, 2025) (citing *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)).

**ARGUMENT**

**I.  Legacy Is Likely to Succeed on the Merits.**

To obtain injunctive relief, a plaintiff need only show that it is likely to prevail on one of its claims. *See Payment All. Int't, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 483 (S.D.N.Y. 2007). Legacy is likely to prevail on all of its claims.

    **A.  Legacy Is Likely to Prevail on Its Breach of Contract Claims.**

        1.  The Noncompete Covenant Is Enforceable.

Defendants' argument against enforcing the noncompete misunderstands the law: the Purchase Agreement Covenants were entered into in the context of Barajas' sale of a business, and they are therefore subject to a different standard than those solely based on an individual's employment. But Defendants rely exclusively on cases only in the employment context, which are inapposite here.

Defendants overlook that, as a preliminary matter, federal courts in New York typically enforce restrictive covenants entered into in the context of the sale of a business "because the buyer has in part bargained for the good will of the seller's customers." *Express Freight Sys. Inc. v. YMB Enters. Inc.*, 623 F. Supp. 3d 39, 50 (E.D.N.Y. 2022) (citing *Steelite Int'l U.S.A., Inc. v. McManus*,

6

No. 21-CV-2645 (LAK), 2021 WL 1648025, at *5 (S.D.N.Y. Apr. 27, 2021)); *see also Naden v. Numerex Corp.*, 593 F. Supp. 2d 675, 680 (S.D.N.Y. 2009); *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 611 (S.D.N.Y. 2001). The Purchase Agreement Covenants were indisputably entered into pursuant to the sale of a business. *See* FAC Ex. A p. 1; Barajas Decl. ¶¶ 3–4. This Court should therefore apply the "relatively permissive standard applicable in the sale of a business context," *Steelite*, 2021 WL 1648025, at *6, in evaluating the enforceability of the Purchase Agreement Covenants.

Defendants mistakenly contend that five years is unreasonable. But all of their cases are inapposite because those courts addressed covenants contained in employment agreements rather than purchase agreements. *See id*. (holding reasonableness standard differs in the context of the sale of a business). In fact, courts routinely enforce similar restrictive covenants lasting five years. For example, in *Intertek Testing Services, N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 310 (E.D.N.Y. 2020)—which Defendants cite for the general proposition that a covenant must be reasonable—the Court granted a preliminary injunction to enforce restrictive covenants entered into in the context of the sale of a business and found that their five-year term was reasonable.

Even where a given restrictive covenant is unreasonable, however, courts have blue penciled and enforced a narrowed version of the covenant at the preliminary injunction phase. In *Ferreira*, for instance, the defendant employee signed an employment agreement that included non-competition and non-solicitation covenants following a merger of the plaintiff and the employee's former employer. *Id*. at 479. The Court first determined that the covenant was ancillary to the sale of a business, and concluded that it "need not meet the higher standard for enforcement of a non-compete employment Covenant." *Id*. at 483. The noncompetition covenant in that case did not have a geographic scope, *see id*. at 479 n.1, but the Court narrowed the covenant to the

7

continental United States, *see id*. at 484 n.4 and granted injunctive relief, *id*. at 485. *See also Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 277 (E.D.N.Y. 2002) (granting preliminary injunction because defendant's conduct violated any reasonable interpretation of the covenant); *Mister Softee, Inc. v. Tsirkos*, No. 14 Civ. 1975 LTS RLE, 2014 WL 2535114 (S.D.N.Y. June 5, 2014) (granting preliminary injunction after narrowing scope); *Adecco USA, Inc. v. Staffworks, Inc.*, No. 6:20-CV-744 (MAD/TWD), 2020 WL 7028872 (N.D.N.Y. Sept. 15, 2020) (same).

Here, the Court should enforce the Purchase Agreement Covenants as written,[2] but even if the Court determines they are unreasonable in scope, the Court should reform the covenants and enforce them, especially since the evidence of Barajas' breaches is overwhelming.

### 2. Evidence Shows that Barajas Violated the Noncompete Covenant.

Defendants contend that Legacy has not demonstrated that Barajas is a direct competitor. But Defendants make absolutely no attempt to grapple with the text messages[3] that clearly show that Defendants were aware of the Noncompete Covenant, hiding Barajas' involvement, and planning for Wolff to transfer an ownership interest to Barajas later.

They further admit that Wolff's competing business completed a job in Mississippi, a state where the Company does business and where Skelton and Knight were based. Wolff Decl. ¶ 11;

---

[2] There is ample evidence that the Company does business in many states across the U.S. McComas Decl. ¶6.
[3] Defendants suggest that these text messages were "inappropriately tak[en]." *See* Defs.' Br. at 11. That is not the case. First, the employee handbook to which she was subject and knew about provides that employees should have "no expectation of privacy or confidentiality" in any information stored on a company-issued device. *See* McComas Aff. ¶ 6 Ex. C, pp. 37, 40; Hadamik Decl. Ex. F. Moreover, regardless of the handbook, Tennessee law permits employers to "monitor[], review[], access[], or block[] electronic data stored on an electronic communications device" supplied by the employer so long as it is in accordance with other state and federal law, and Tennessee law expressly permits employers to access "[a]n electronic communications device supplied by or paid for wholly or in part by the employer." Tenn. Code. Ann. § 50-1-1003. Accordingly, the text messages were properly obtained and are therefore admissible evidence in this proceeding.

8

McComas Decl. ¶¶6, 59, 65. Wolff also does not deny that he and Barajas spoke about their intentions to start the competing business; he merely represents that he has "not made any decision" about granting Barajas equity in it. Wolff Decl. ¶ 9. And again, Defendants do not deny that the competing business does roofing and exterior renovation. *See* Wolff Decl. ¶ 12; Barajas Decl. ¶ 19.

### 3. Evidence Shows that Barajas Violated the Nonsolicit Covenant.

Defendants do not contest—and thus effectively concede—that Barajas solicited Skelton and Knight. *See* McComas Aff. ¶ 7 Ex. E. Additionally, in March 2025, Raffles downloaded the employee rosters for all 5 of Southern's sales territories. McComas Decl. ¶32, Exs. 9-13.

Defendants' allegations that Raffles "[i]n a stroke of luck" first approached Barajas, Barajas Decl. ¶ 20, and moonlighted for his other businesses, are immaterial. He still violated his obligation not to hire Company employees. *See Evolution Mkts., Inc. v. Penny*, No. 7823/09, 2009 WL 1470451, at *17 (N.Y. Sup. Ct. 2009) (enforcing no-hire clause). In any event, Raffles' text messages show Barajas offered to pay for her licensing and to "sweeten the deal" to lure her away. Hadamik Decl. Ex C; *see also* Hadamik Aff. Ex. B.

### B.   Legacy Is Likely to Prevail on Its Misappropriation of Trade Secrets Claims.

Legacy is also likely to prevail on its misappropriation of trade secrets claims.[4]

### 1. Defendants Misappropriated Legacy's Trade Secrets.

Barajas had access to Company trade secrets, such as customer contracts, pay structures, and training materials. McComas Aff. ¶ 5; McComas Decl. ¶21-22. This information is not generally known to individuals outside of the Company. McComas Aff. ¶ 9; McComas Decl. ¶38.

---

[4] Defendants failed to address Legacy's claim under Tennessee law.

9

It is economically valuable to the Company, has been developed through years of industry experience and expertise, and includes unique information from which competitors could directly benefit. McComas Aff. ¶9; McComas Decl. ¶12. This includes critical procedures that Legacy cultivated over its many years in the industry, and that set it apart from its competitors. McComas Aff. ¶ 9; McComas Decl. ¶12. Legacy boasts higher per-salesman revenue and better overturn rates, all of which is the result of the unique methodology the Company uses to conduct its business. McComas Aff. ¶ 9; McComas Decl. ¶¶15-17. The Company has taken steps to maintain the secrecy of this information. McComas Aff. ¶ 9.

Raffles downloaded files containing trade secrets. McComas Aff. ¶ 9; McComas Decl. ¶19. Text messages show that Raffles and Barajas misappropriated this protected information. Hadamik Aff. ¶ 5 Ex. B. And they did so in concert with Wolff, who was their partner in starting the new competing business. Moreover, not all of the documents—and indeed, none of the most sensitive documents—were created by Raffles or her alleged AI co-author. McComas Decl. ¶19. Even the documents that may have been created using AI would have required Raffles' prompting using her knowledge of Legacy's trade secrets. McComas Decl. ¶36; Hadamik Decl. Ex. D.

### 2. Legacy Is Entitled to an Adverse Inference Due to Spoliation.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Under Rule 37(e), a court must first decide "if a party failed to take 'reasonable steps' to preserve electronically stored information 'that should have been preserved in the anticipation or conduct of litigation.'" *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D 47, 59 (S.D.N.Y. 2020) (quoting Fed. R. Civ. P. 37(e)). If so, the court must then decide whether prejudice exists or whether the party acted with

the intent to deprive the other party of information for use in the litigation. *StoneX Grp., Inc. v. Shipman*, No. 23-CV-00613, 2024 WL 1509346, at *8 (S.D.N.Y. Feb. 5, 2024).

Raffles deleted her browser history on June 11 (the day before being interviewed by the Company), and factory reset her laptop on June 25 about two hours after receiving notice about this lawsuit. Hadamik Aff. ¶6; Hadamik Decl. ¶7; Allen Decl. ¶3, Ex. A. In so doing, she deleted critical evidence of the files she downloaded and how she used those files. Hadamik Decl. ¶8.

Raffles, Barajas, Knight, and Skelton have all failed to respond to Legacy's requests to confirm that they are preserving (and have not deleted) evidence in this matter.

Due to Raffles' actions, it is impossible for Legacy or this Court to verify what activity Raffles carried out on her computer. Hadamik Decl. ¶ 7. These facts show Raffles intentionally failed to preserve information that Legacy intended to use in this lawsuit, and an adverse inference is warranted.

### C. Regardless of Defendants' Equivocations, the Equities Weigh in Legacy's Favor

A party may be entitled to a preliminary injunction where there is "a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, No. 5:24-cv-276 (BKS/ML), 2024 WL 3093542, at *4 (N.D.N.Y. May 16, 2014); *see also Metro. Taxicab Bd.*, 615 F.3d at 156. This rule permits a court to "grant injunctive relief 'where it cannot be determined with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *St. Joseph's*, 2024 WL 3093542, at *4. As discussed above, this case presents viable claims creating

11

a "serious question[] going to the merits to make them a fair ground for trial." *Id*. And this Court has previously found that the balance of hardships weighs in favor of a plaintiff seeking to enforce a contract that benefited the defendant, as is the case here. *See, e.g.*, *JTH Tax, Inc. v. Sawhney*, No. 19-cv-4035 (AJN), 2019 WL 3051760, at *7 (S.D.N.Y. July 11, 2019).

## II. Legacy Will Suffer Irreparable Harm Absent a Preliminary Injunction.

### A. Barajas' Continued Violation of the Purchase Agreement Covenants Constitutes an Unquantifiable Injury.

Restrictive covenants those here "strive to protect various difficult-to-quantify interests." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 673 (2d Cir. 2023). While a finding of irreparable injury is not automatic, "courts often issue preliminary injunctions when it appears likely that the plaintiff will prevail in covenant-not-to-compete cases." *Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014). And "[i]rreparable harm is presumed where a trade secret has been misappropriated." *Estee Lauder*, 430 F. Supp. 2d at 174.

Additionally, courts have held that a contractual acknowledgement that breach constitutes irreparable harm is entitled to some weight. *See Estee Lauder*, 430 F. Supp. 2d at 174 (citing *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). Defendants do not dispute that the Purchase Agreement contains such an acknowledgement. FAC Ex. A. p. 63 § 6.12.

Defendants contend that Legacy has not demonstrated irreparable harm because it has not shown that Barajas is a direct competitor, but as discussed above, that is incorrect as a factual matter.[5] And the cases cited by Defendants, *Cenveo Corp. v. Diversapack LLC*, No. 09 CIV. 7544 (SAS), 2009 WL 3169484 (S.D.N.Y. 2009) and *Rensselaer Polytechnic Institute v. Apple Inc.*,

---

[5] Defendants also contend that any evidence of irreparable harm is contained in the McComas Affirmation, which is hearsay that should not be considered by this Court. The fact that evidence may be hearsay "goes to weight, not preclusion, at the preliminary injunction stage." *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).

12

2014 WL 201965 (N.D.N.Y. 2014), simply held that showing the parties are direct competitors is relevant but not required. *See, e.g.*, *Cenveo*, 2009 WL 3169484, at *6 ("Here, [plaintiff] concedes that [defendant] is not a direct competitor *and has not alleged misappropriation of trade secrets, clients, or confidential information*.").

### B. Barajas' Admitted Affiliation with Wolff's Business Shows that the Disclosure of Legacy's Trade Secrets Is Inevitable.

Barajas has admitted that he "put together a team of individuals" to help remodel his rental properties to "control[] renovation costs," and further that he has a financial interest in Wolff's competing business as a customer. *See* Barajas Decl. ¶¶ 15–19, 34. He does not deny that his or Wolff's efforts include roofing and exterior renovation. These associations create an untenable risk that Legacy's trade secrets will inevitably be misappropriated as Defendants work to establish this new entity, which will also cause irreparable harm to Legacy.

In *Payment Alliance International, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 480 (S.D.N.Y. 2007), this Court acknowledged that "even where a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed." New York courts have relied on the inevitable disclosure doctrine to enforce restrictive covenants. *See id*. at 481. Here, the evidence shows that Barajas and Raffles had access to trade secrets. Barajas admitted to, at the very least, having an interest in Wolff's competing business by being a customer. *See* Barajas Decl. ¶¶ 15–19, 34. Accordingly, the disclosure of Legacy's trade secrets is inevitable, and refusing to enforce the Purchase Agreement Covenants would cause irreparable injury to Legacy, even absent proof that such trade secrets were in fact disclosed or misused.

### III. The Public Interest Weighs in Favor of Holding Barajas to the Terms of the Contract He Signed.

The public interest weighs in favor of a preliminary injunction. Defendants make no argument regarding this prong of the analysis, nor could they: "[t]here is a well-recognized public interest in enforcing contracts." *Empower Energies, Inc. v. SolarBlue, LLC*, No. 16-CV-3220, 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016); *see also Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, No. 20-CV-181, 2020 WL 915824, at *12 (S.D.N.Y. Feb. 26, 2020) ("Courts routinely hold 'there is undoubtedly a public interest in enforcing valid contracts including such restrictive covenants as they may contain.'").

### CONCLUSION

Barajas and USA Contracting should be preliminarily enjoined.

Dated: New York, New York

July 7, 2025

Respectfully submitted,

/s/ *Margaret H. Allen*

Melissa Colón-Bosolet
mcolon-bosolet@sidley.com
Margaret H. Allen
margaret.allen@sidley.com
(admitted *pro hac vice*)
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Phone: (212) 839-5300
Fax: (212) 839-5599
*Attorneys for Plaintiff*
*Legacy Restoration, LLC*

14